Shaban DOBROVA, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT SERVICES DIVISION, Appellee.

No. S–12272.

Supreme Court of Alaska.

Nov. 9, 2007.

---

Kenneth C. Kirk, Kenneth Kirk & Associates, Anchorage, for Appellant.

Julia B. Bockmon, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Shaban Dobrova was ordered to pay child support for his daughter. He appealed the child-support order to the superior court, which remanded the case to the administrative law judge for further findings and a new order. A new child-support order was issued on remand, but Dobrova failed to appeal within the thirty-day period allowed by Alaska law. About five months after the order on remand was issued, Dobrova filed a motion asking the superior court to accept a late appeal from the order on remand. The motion suggested that Dobrova's former attorney had not received the new order and had been unaware of it until a few weeks before Dobrova moved to accept the late appeal. The state opposed Dobrova's motion, contending that copies of the new order on remand had been faxed to Dobrova's former attorney on two occasions, both more than thirty days before Dobrova first sought leave to file his late appeal. The superior court denied the motion. Dobrova appealed the superior court's ruling to this court and then successfully moved for a superior court order to supplement the appellate record with documents from his original administrative appeal, which support his contention that his former attorney was not properly notified of the order on remand and delayed filing an appeal because of confusion over the status of the administrative proceedings on remand.

Given the limited information available to the superior court when it ruled on Dobrova's motion to accept his late appeal, we conclude that the court did not abuse its discretion in denying Dobrova's motion; but in light of the supplemental information added to the record after Dobrova filed this appeal, we hold that the interests of justice require a remand to reconsider whether a late appeal should be granted.

## II. FACTS AND PROCEEDINGS

Shaban Dobrova was ordered to pay child support for his child who was born in 1998. In November 2001 the Child Support Services Division (CSSD)[1] issued an administrative order setting his monthly child support at $849 effective December 1, 2001, and establishing child-support arrears of $28,335 from October 1998 through November 2001. Dobrova requested an administrative review; after the review, CSSD amended its order, significantly increasing Dobrova's child-support obligation and arrears. Dobrova then asked for a formal hearing; Administrative Law Judge Mark T. Handley conducted a hearing and issued a decision setting Dobrova's child support at the maximum amount then allowable under Alaska Civil Rule 90.3(c)(2)—$1,400 per month—with arrears dating back to the child's birth.

---

1. In the early stages of this proceeding, the Child Support Services Division agency was named the Child Support Enforcement Division, which was commonly shortened to CSED. For simplicity we refer to the division by its current name and acronym.

Dobrova appealed to the superior court. In the superior court proceedings, attorney Dan O'Phelan replaced Dobrova's original attorney, Swan Ching. Superior Court Judge Joel H. Bolger issued a decision affirming the administrative law judge's findings in part, but vacated the administrative order and remanded the case for supplemental findings and entry of a new child-support order in light of those findings.

The superior court's order remanding the case did not require further hearings; on August 26, 2005, the administrative law judge issued a decision on remand, again setting Dobrova's support obligation at $1,400 per month and making additional findings in support of that determination.

Because attorney O'Phelan had never entered an appearance as Dobrova's counsel at the administrative level of the proceedings, the August 26 order on remand was sent to Dobrova's original counsel, Swan Ching. Four days later, on August 30, 2005, Stacy Steinberg, the assistant attorney general handling the case for CSSD, noticed the mistake and faxed a copy of the decision to O'Phelan's office. Steinberg's fax transmission included a cover sheet stating, in relevant part:

Dan—I don't know if you ever entered an appearance in the CSSD administrative case. The administrative law judge just issued his opinion pursuant to the remand by the superior court. Mr. Dobrova's copy was sent to his previous attorney who was the attorney of record in the administrative proceeding. Attached is a copy for your files. I don't know if you are representing Mr. Dobrova in this administrative case.

Steinberg's fax transmission report showed that the fax was successfully received.

On September 8, 2005, CSSD mailed a "Notice of Adjustment" to Dobrova's home address, informing him that his "account has been adjusted in the total amount of *$92,266.42* for the period *10/01/1998 through 9/08/2005.*" The notice further stated that the adjustment had been entered because a "Child Support Decision and Order on Remand from Court, dated 08/26/05, orders Mr. Dobrova to pay child support in the amount

of $1,400.00 per month, from 10/98 forward." The notice then added that "[a]ll payments must be made to the Child Support Services Division. If you have any questions or concerns about this action, please contact [CSSD]."

O'Phelan failed to file a timely appeal on behalf of Dobrova and evidently took no further action until CSSD began enforcing the new child-support order. On November 16, 2005, O'Phelan filed a motion with the superior court under the case number assigned to Dobrova's original appeal. That motion asked the court to bar CSSD from enforcing the administrative law judge's 2003 child-support order, arguing in part that the order had been vacated by the superior court. Among the exhibits attached to the motion, O'Phelan included the CSSD Notice of Adjustment, which expressly referred to CSSD's August 26, 2005 order on remand.

On December 15, 2005, after receiving Dobrova's new motion, Steinberg again faxed a copy of the August 26, 2005 order on remand to O'Phelan, together with a copy of the cover sheet she had included with her original fax transmission on August 30. As before, Steinberg's fax transmission report showed that the fax was successfully received.

On January 10, 2006, Judge Bolger entered an order denying Dobrova's motion to preclude CSSD from collecting Dobrova's child-support obligation. Judge Bolger's order noted that CSSD was enforcing the August 26 order on remand, not its original order, and that Dobrova had not appealed the August 26 order.

Several days before Judge Bolger entered the January 10 order, O'Phelan, with Dobrova's consent, signed a motion to withdraw as Dobrova's superior court attorney, claiming that a conflict of interest concerning an unrelated matter had arisen between Dobrova and O'Phelan and that O'Phelan had moved his practice to Hawaii and was no longer taking Alaska clients. The motion was filed on January 13, and the superior court granted it on February 2, 2006.

On January 24, 2006, attorney Kenneth Kirk filed an entry of appearance as Dobro-

va's new counsel in the superior court; Kirk also filed a notice of appeal from CSSD's August 26, 2005 decision on remand, together with a sworn motion to accept the late-filed appeal. Kirk's motion alleged good cause to relax the usual thirty-day deadline for filing the appeal. In his motion, Kirk acknowledged that the administrative law judge's decision on remand was distributed on August 26, 2005, thus making an appeal due by September 26, 2005. But Kirk pointed out that the certificate of service for the order on remand showed that it had been sent to Dobrova's original administrative attorney, Swan Ching, instead of to O'Phelan. Kirk alleged that CSSD's enforcement of the order occurred "to Mr. Dobrova's apparent surprise." Kirk also represented that, in December 2005, O'Phelan had "filed motions in the previous appeal case, asking Judge Bolger to stay CSSD from enforcement." Without further explanation, Kirk asserted these motions made it "quite apparent . . . that he [O'Phelan] did not know a subsequent decision had been issued." While acknowledging that CSSD's attorney had apparently sent a copy of the decision on remand to O'Phelan by fax on August 30, 2005, Kirk also asserted—again, without further explanation—that, "[n]onetheless, Mr. O'Phelan claimed not to have seen it."

Kirk's January 25 motion to accept Dobrova's late appeal was filed without any supporting affidavits from Dobrova or O'Phelan and without any other documents or exhibits besides a copy of CSSD's August 26 order on remand, which accompanied Dobrova's proposed notice on appeal.

Assistant Attorney General Steinberg opposed Dobrova's motion for late filing, insisting that Dobrova's appeal was untimely and that he had failed to establish good cause for the delay. Steinberg stated that the only justification Dobrova advanced for filing his appeal late was that his "former attorney, Mr. O'Phelan, did not receive the supplemental child support decision from the administrative law judge, and thus was not aware of the time for filing." Steinberg insisted that this argument lacked merit for several reasons.

First, Steinberg noted, O'Phelan apparently had never entered an appearance as Dobrova's counsel in the administrative proceedings, so the agency properly sent the decision on remand to Swan Ching, who was still Dobrova's attorney of record at the administrative level. Furthermore, Steinberg noted that Dobrova's motion failed to "provide any sworn testimony from Mr. O'Phelan concerning the reasons for his failure to file a timely appeal" and emphasized that the court was required to "ignore the entirely hearsay statements made in Appellant's Motion for Late Filing that are attributed to Mr. O'Phelan."

In addition, Steinberg's affidavit informed the court that she had personally faxed copies of CSSD's decision on remand directly to O'Phelan's office on two occasions—once on August 30, 2004, just four days after the decision was issued, and the second time on December 15, 2004, soon after Steinberg learned that O'Phelan had filed a motion in the original superior court appeal asking Judge Bolger to stay CSSD's efforts to enforce its original administrative order. Steinberg pointed out that Dobrova's motion to accept his untimely appeal did not dispute O'Phelan's receipt of the December 15 fax. "Even using this date, December 15, 2005," Steinberg argued, "the appeal is untimely."

In support of her opposition and affidavit, Steinberg submitted copies of the faxes (and cover sheets, with transmission reports) she had sent to O'Phelan in August and December 2005.

When Dobrova filed the motion to accept his late appeal, the superior court opened a new appellate case file and gave the appeal a new case number. Dobrova's motion to accept his late filing was assigned to Superior Court Judge Morgan Christen. Based on Dobrova's motion, the state's opposition, the proposed notice of appeal, and other paperwork accompanying the proposed notice, Judge Christen entered an order on March 5, 2006, summarily rejecting Dobrova's late appeal.

Dobrova then filed a timely notice of appeal with this court, challenging the superior court's order denying his motion to accept his untimely filing there. After filing his su-

preme court appeal, Dobrova evidently filed a new motion in the superior court, asking to supplement the appellate record for his pending supreme court appeal to include documents from his first superior court appellate case file. Namely, Dobrova sought to include paperwork relating to his November 2005 motion, which had asked Judge Bolger to bar CSSD from enforcing its original administrative child-support order. Because these documents had not been filed with the superior court in his second appeal but were relevant to Dobrova's claim of good cause for filing that appeal late, Dobrova argued that they should be added to the appellate record so that the supreme court could consider them in reviewing Judge Christen's order declining his late appeal.

Dobrova's motion to supplement the record was assigned to Superior Court Judge Fred Torrisi; Judge Torrisi granted the motion on July 7, 2006, commenting that the documents from Dobrova's original appeal "may be of some help to the supreme court in understanding what happened" in this case.

## III. DISCUSSION

### A. Superior Court Order Denying Leave To File Late Appeal

■ Dobrova argues that the superior court should have granted his motion to accept his late appeal from the CSSD's August 26, 2005 order on remand. Under both Appellate Rule 602(a)(2) and AS 25.27.210(a), Dobrova was required to appeal the administrative decision setting child support within thirty days of its distribution.[2] But Appellate Rule 502(b) gives the superior court broad discretion to relax the usual thirty-day limit if Dobrova established good cause to accept his late-filed notice.[3] We review for abuse of discretion "the superior court's decision to waive procedural rules and accept a party's untimely appeal."[4] The superior court abuses its discretion only if it issues a decision "which is arbitrary, capricious, manifestly unreasonable, or which stems from an improper motive."[5]

In contending that Judge Christen abused her discretion by denying his motion to accept his late appeal, Dobrova relies heavily on the November 16, 2005 motion filed by his former attorney, O'Phelan. That motion sought to bar CSSD from enforcing its administrative order establishing Dobrova's child-support arrears. Statements made in the motion strongly suggest that, when O'Phelan filed it, he was still unaware that the administrative law judge had issued a new child-support order on remand in August. Given the November 2005 motion, Dobrova insists that "[i]t is quite apparent, from the actions Mr. O'Phelan took . . . that he did not at that time know that the decision had been issued." Dobrova further asserts that, once he found out about the order on remand, he promptly retained a new attorney and appealed to the superior court. Dobrova contends that his proposed late-filed appeal would cause no prejudice to CSSD; he points out that the agency would remain free to enforce the current child-support order while his appeal is pending. Analogizing his case to the ones we considered in *Sheehan v. University of Alaska*[6] and *Metcalf v. Felec*

---

**2.** Appellate Rule 602(a)(2) provides in part:
> An appeal may be taken to the superior court from an administrative agency within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant.

A similar thirty-day deadline applies under AS 25.27.210(a).

**3.** Appellate Rule 502(b) provides in part:
> When by these rules or by a notice given thereunder or by order of the appellate court an act is required or allowed to be done at or within a specified time, the appellate court may in its discretion, either on motion of a party, showing good cause, or sua sponte:

> (1) Extend the time period, either before or after its expiration or
> (2) Validate an act done after the expiration of the time period.

**4.** *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue*, 151 P.3d 434, 438 (Alaska 2006) (citing *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1258 (Alaska 1980)).

**5.** *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1297 (Alaska 1985).

**6.** *Sheehan*, 700 P.2d at 1295.

*Services*,[7] Dobrova also faults the superior court for rejecting his late appeal without explaining and justifying its ruling.

Dobrova's arguments are problematic. Initially, we note that the soundness of the superior court's discretionary ruling must be judged by the pleadings and arguments before that court at the time of its ruling.[8]

As we have already pointed out in the statement of facts, when Judge Christen denied Dobrova's motion to accept his late appeal, the superior court file in the new appeal did not include Dobrova's November 16, 2005 motion to bar CSSD from enforcing its administrative support order—a motion that O'Phelan had filed in Dobrova's first superior court appeal, which was assigned to Judge Bolger. Nor did Dobrova attach a copy of his earlier motion in the first appeal to his motion to accept his untimely second appeal. Thus, at the time Judge Christen denied Dobrova's motion to accept his untimely second appeal, the superior court's file in the new appeal contained nothing about Dobrova's motion in the first appeal except the information set out in his motion to accept the second appeal. That information consisted of a single, conclusory assertion: regarding the earlier motion, Dobrova simply alleged that "Mr. O'Phelan filed motions in the previous appeal case, asking Judge Bolger to stay CSSD from enforcement. It is quite apparent from his motion that he did not know a subsequent decision had been issued."

As we have also pointed out above, the state countered this argument by producing solid evidence that O'Phelan had received actual notice of the order on remand well before he sought to appeal it. Specifically, CSSD's counsel, Steinberg, established that she had successfully faxed copies of the new order directly to O'Phelan's office on two separate occasions, both well over thirty days before Dobrova's January 24, 2006 motion to accept his late appeal. Dobrova's motion did not dispute the fact that these faxes had been sent and received; and apart from a cryptic assertion that "O'Phelan claimed not to have seen" the fax Steinberg sent on August 30, Dobrova provided no support for his claim that O'Phelan failed to learn of the order on remand until early January 2006. As Steinberg aptly noted in opposing Dobrova's motion for late filing below, even using December 15, 2005, the date of her second successful fax to O'Phelan, "the appeal is untimely."

In short, the pleadings and documents in the superior court file when Judge Christen denied the motion to accept Dobrova's untimely second appeal unequivocally showed that O'Phelan received actual notice of the order on remand more than thirty days before Dobrova sought to file his untimely appeal from that order; and Dobrova failed to advance any facts to dispute this showing or to justify his delay after receiving the notice. As Dobrova himself acknowledges, inexcusable neglect would not be a basis for relief; to prevail on his motion for leave to file late, Appellate Rule 502 requires Dobrova to bear the burden of establishing good cause or, at a minimum, excusable neglect for not filing sooner.[9] Under the circumstances presented here, we are unable to say that the superior court abused its discretion in finding that Dobrova failed to meet this burden.

██ Nor do the circumstances of this case support Dobrova's claim that *Sheehan* and *Metcalf* required the superior court to make findings to justify refusing Dobrova's untimely appeal. Both cases involved situations in which appellants who had filed timely appeals later neglected to pursue them in a timely manner, thus prompting the trial courts to order dismissals for failure to prosecute the appeals.[10] Likening the dismissals to litigation-ending sanctions, we held in both cases that the trial court should have made specific findings justifying the need for such

7. *Metcalf v. Felec Servs.*, 938 P.2d 1023 (Alaska 1997).

8. *See* Alaska R.App. P. 604(b)(1)(A) (record on appeal from administrative agency consists of papers and exhibits filed with agency).

9. *Cf., e.g., Hartland v. Hartland*, 777 P.2d 636, 644–45 (Alaska 1989) (showing of excusable neglect required to warrant relief under Alaska Civil Rule 60(b)).

10. *Sheehan*, 700 P.2d at 1296 n. 1; *Metcalf*, 938 P.2d at 1024.

a drastic measure.[11] Here, by contrast, the superior court's order denying Dobrova's motion cannot be likened to a dismissal entered as a litigation-ending sanction, for Dobrova had never properly commenced the appeal he sought leave to pursue. And the superior court's order denying Dobrova's motion did not dismiss a pending action; it merely preserved the status quo. In this situation, Dobrova bore the burden of establishing good·cause or excusable neglect as a condition of commencing his untimely appeal; if he failed to do so, the superior court had no obligation to apply the standards governing a litigation-ending sanction.[12]

Accordingly, we reject Dobrova's contention that the superior court entered inadequate findings to justify its rulings. Based on the arguments and information before the superior court when it ruled, we hold that the court did not abuse its discretion in denying Dobrova's motion to file a late appeal.

### B. Post–Appeal Superior Court Proceedings To Supplement the Record

■ As already mentioned above, after Dobrova's appeal to this court had already been filed, Dobrova filed a superior court motion to supplement the appellate record with documents from his original administrative appeal; this motion was assigned to Superior Court Judge Fred Torrisi, who granted it, commenting that the supplemental documents "may be of some help to the supreme court in understanding what happened" in this case.[13] Now that the record has been supplemented, Dobrova relies heavily on the November 16, 2005 motion filed by his former attorney, O'Phelan. That motion sought to bar CSSD from its renewed efforts to enforce its administrative order

establishing Dobrova's child-support arrears. Statements made by O'Phelan in support of the motion strongly establish that he was unaware that the administrative law judge had issued a new child-support order on remand in August; O'Phelan's statements further suggest that CSSD's confusion over the status of his case may have led Dobrova and O'Phelan to believe that the agency's recent enforcement efforts inexplicably violated an earlier commitment to drop the administrative proceedings. The supplemental documents also strongly suggest that O'Phelan's misunderstanding likely was influenced by a convergence of unfortunate circumstances: on the one hand, O'Phelan had relocated his practice from Alaska to Hawaii and lacked immediate access to Dobrova's files; on the other, Dobrova was experiencing stress from the recent loss of a family member, so O'Phelan "felt that the timing was not right to try to figure out why [Dobrova] was sent the [CSSD] Notice of Adjustment."

In addition, the supplemental documents suggest that CSSD bore the responsibility for mistakenly sending the hearing officer's order on remand to Dobrova's original attorney instead of serving it on O'Phelan: although the state asserts that the misdirected service occurred because of O'Phelan's failure to file a notice of appearance informing the agency that he had replaced Dobrova's original attorney, documents accompanying O'Phelan's November 16 motion establish that O'Phelan had personally engaged in extensive communications with CSSD on Dobrova's behalf after Judge Bolger remanded the case to the agency.

Finally, although Kirk undeniably failed to call these documents to Judge Christen's attention in his January 2006 motion to accept Dobrova's late appeal, the record indicates

---

11. *Sheehan,* 700 P.2d at 1297; *Metcalf,* 938 P.2d at 1025.

12. *See, e.g., Beavers v. Alaska Constr., Inc.,* 787 P.2d 643, 644 (Alaska 1990).

13. We note that, despite the superior court's order, the appellate record apparently was not actually supplemented. As it currently stands, our record includes neither Dobrova's motion to supplement the record nor the supplemental documents requested in his motion; these documents have been made available to us only in form of

copies included in Dobrova's excerpt of the record. We further note, as a technical matter, that, under Appellate Rule 203, the superior court probably lacked jurisdiction to supplement the appellate record after Dobrova filed his notice of appeal with this court. The better course in these circumstances might have been to request a stay of the pending appeal and a remand of jurisdiction to the superior court in order to allow Dobrova to address the supplemental records by filing a motion for relief from judgment under Civil Rule 60(b).

that Kirk may not have had access to or awareness of the information contained in the supplemental documents when he filed Dobrova's January 2006 motion. The circumstances supporting this conclusion include the complexity of the prior administrative proceedings, the prior documents' location in a separate superior court case file, the recency of Kirk's entry of appearance as Dobrova's attorney, and O'Phelan's absence from Alaska.

Viewing the totality of these circumstances against the backdrop of the supplemental documents, it appears that, while O'Phelan's November 16 motion was formally filed as a motion to stay further CSSD enforcement efforts, it actually challenged actions taken by CSSD in light of the hearing officer's order on remand. In substance if not in form, the motion appears to qualify as an attempt to appeal the order on remand. At a minimum, then, we think that the timeliness of Dobrova's efforts to appeal the order on remand should be evaluated in light of the delay occurring between September 25, 2005—the thirty-day deadline for appealing the hearing officer's August 26, 2005 order on remand—and November 16, the date of O'Phelan's motion. And if it appears that CSSD's mistakes substantially contributed to this period of delay, we further believe that it would be an abuse of discretion to deny Dobrova's motion to accept his late appeal.

■ Although we realize that Dobrova did not seek relief based on this theory below and has not argued it on appeal, we have previously recognized that we "will notice a claim not raised in the trial court if necessary to prevent a miscarriage of justice."[14] In our view, Dobrova's situation falls within the ambit of this exception.

## IV. CONCLUSION

For these reasons, although we find no abuse of discretion in the superior court's order denying the motion to accept Dobrova's late-filed appeal, we REMAND in the interest of justice to allow reconsideration of

that ruling in light of the circumstances revealed in the supplemental record.

---

14. *See, e.g., Municipality of Anchorage v. Sisters of Providence in Washington, Inc.,* 628 P.2d 22, 34 n. 14 (Alaska 1981) (internal citation omitted).