Mary JAWORSKI, Appellant,

v.

ESTATES OF Andrew G. HORWATH, Marjorie Horwath, Michael J. Horwath, by Sue STREETS, Personal Representative, Appellee.

No. S–13566.

Supreme Court of Alaska.

May 25, 2012.

Michael J. Zelensky, Ketchikan, for Appellant.

Amanda M. Schulz, Ketchikan, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

PER CURIAM.

1. Alaska's probate nonclaim statute, AS 13.16.460, provides that claims against an estate arising before the decedent's death are barred unless presented: (1) within four months of the first publication of notice to creditors; (2) within three years of death if no notice to creditors is published; or (3) within limits specified by other applicable statutes of limitations.[1] The statute also bars most claims arising after the decedent's death unless presented within four months of the time they arise.[2]

2. Andrew G. Horwath, Sr. died in 1991 in Ketchikan. His widow, Marjorie Horwath, later moved to Minnesota to live with their daughter, Mary Jaworski. A Minnesota court entered a conservatorship order for Marjorie, appointing Mary "Conservator of the Person" and Michael Horwath—Andrew and Marjorie's son, and Mary's brother—"Conservator of the Estate." Marjorie died in 2001, and Michael died in 2007. Michael served for a time as personal representative of Andrew's estate and applied to do so for Marjorie's estate, as well, but was not formally appointed. Another Horwath daughter, Sue Streets, became the personal representative for the estates of Andrew, Marjorie, and Michael.

3. In November 2008 Mary presented claims against all three estates, alleging that her then-deceased brother Michael had not always made a court-ordered monthly payment to her for their mother's care and that Michael had not reimbursed her for improvements she made to her house while caring for Marjorie. Mary also claimed Michael had

---

1. AS 13.16.460 provides in relevant part:

   All claims against a decedent's estate that arose before the death of the decedent ... if not barred earlier by other statute[s] of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

   (1) within four months after the date of the first publication of notice to creditors if notice is given in compliance with AS 13.16.450; ...
   (2) within three years after the decedent's death, if notice to creditors has not been published.

2. *See* AS 13.16.460(b).

improperly dissipated property and mismanaged both parents' estates.

4. Personal representative Sue issued a disallowance of these claims in December 2008, asserting that the claims were unfounded and time-barred under both the nonclaim statute and the applicable statutes of limitations. Mary petitioned for an extension of time to initiate proceedings on her disallowed claims. Sue opposed the .motion, arguing that no extension could be allowed because all of Mary's claims were barred by the applicable statutes of limitations.[3] Mary did not respond to the merits of Sue's arguments. The superior court denied Mary's extension petition on grounds that her claims were barred by applicable statutes of limitations.

5. Mary moved for reconsideration, contending that the superior court's order was "not clear" but seemed to be based on her failure to comply with the nonclaim statute, rather than the underlying statutes of limitations. She asked for clarification. The court did not respond to the motion for reconsideration, and under Alaska Civil Rule 77(k)(4) it was deemed denied 30 days later.[4]

6. Mary appeals. Although Mary's statement of issues on appeal asserts the superior court erred by denying her requested extension because she "exceeded the period under the statute of limitations," thereby causing a "forfeiture" of her claims, the legal arguments in Mary's opening brief do not address this issue. Instead of addressing the court's ruling that her claims were barred by applicable statutes of limitations and that she therefore was not entitled to an extension of

time to initiate proceedings on her disallowed claims, Mary argues her claims should not be barred by the nonclaim statute because she had not been given notice the nonclaim period had begun to run.

7. The issue before the superior court was neither the merits of Mary's claims nor the merits of personal representative Sue's disallowance of Mary's claims for failure to comply with the nonclaim statute. The issue before the court was Mary's requested extension of time to contest Sue's disallowance of Mary's claims. The court denied the extension because the applicable statutes of limitations already had run on all of Mary's claims. Mary did not address the statute of limitations issues in the superior court or in her opening brief to this court. Only in Mary's reply brief did she address the statutes of limitations, and then only in the context of Michael's actions as her mother's Minnesota conservator.[5]

8. Having failed to argue the statute of limitations issues in the superior court or in her opening brief to this court, Mary has waived these issues.[6] The superior court's decision is therefore AFFIRMED.[7]

CHRISTEN, Justice, not participating.

STOWERS, Justice, concurring in part and dissenting in part.

The issue before the superior court was a daughter's request for an extension of time to contest a personal representative's disallowance of the daughter's claims against the estates of her mother, father, and brother. The superior court denied the extension be-

---

**3.** AS 13.16.465(3) provides no extensions of time to initiate a proceeding on a disallowed claim may "run beyond the applicable statute of limitations."

**4.** Alaska R. Civ. P. 77(k)(4) provides that if the court does not rule on a motion for reconsideration within 30 days, the motion is considered denied.

**5.** Very little of the partial dissent's extensive statutes of limitations discussion can be traced to Mary's arguments or briefing.

**6.** *Hymes v. DeRamus*, 222 P.3d 874, 889 (Alaska 2010) ("We have repeatedly held that 'a party may not raise an issue for the first time on appeal.'" (quoting *Brandon v. Corr. Corp. of*

*America*, 28 P.3d 269, 280 (Alaska 2001))); *id.* at 887 ("[I]ssues not argued in opening appellate briefs are waived." (citing *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001))).

**7.** We take no position on whether Mary may, in connection with final accountings in Andrew's and Marjorie's probate estates, assert mismanagement claims as to when Michael served as personal representative. *See* AS 13.16.485(d) ("Issues of liability as between the estate and the personal representative individually may be determined in a proceeding for accounting, surcharge, or indemnification or other appropriate proceeding.").

cause the applicable statutes of limitations had already run as to all of the daughter's claims. This court concludes that the daughter failed on appeal to argue the statute of limitations issues, instead focusing on the probate nonclaim statute. The court concludes the daughter has therefore waived the statute of limitations issues.

I disagree with the court's conclusion because it appears to me that the parties—and perhaps even the superior court—failed to clearly distinguish between the operation of the probate nonclaim statute and other statutes of limitations. I do not believe the statute of limitations arguments were waived on appeal, but even if they were I would exercise our discretion to address these issues on the merits, because they are important and because I believe that the bar and bench would profit from an opinion on the merits from this court. Also, I believe that if this court would address the merits of the superior court's statutes of limitations ruling, that would change the outcome with respect to the daughter's claims that relate to her estate mismanagement claim.

## I. INTRODUCTION

Alaska's probate nonclaim statute, AS 13.16.460, provides that all claims against an estate arising before the decedent's death are barred unless presented (1) within four months of the first publication of notice to creditors, (2) within three years of death if no notice to creditors is published, or (3) within limits specified by other applicable statutes of limitations.[1] It also provides that most claims arising after death are barred unless presented within four months of the time they arise.[2]

Andrew G. Horwath, Sr. died in 1991 in Ketchikan. His widow Marjorie Horwath[3]

moved to Minnesota to live with their daughter, Mary Jaworski, who was appointed "conservator of Marjorie's person" by a Minnesota court. Michael Horwath—Mary's brother, and Andrew Sr. and Marjorie's son—became conservator of Marjorie's estate during her final years. Marjorie died in 2001, and Michael died in 2007. Another Horwath daughter, Sue Streets, is currently the personal representative (PR) for the estates of Andrew Sr., Marjorie, and Michael.

In November 2008 Mary presented claims against all three estates, alleging that her then-deceased brother Michael had not always paid the court-ordered $600 per month to Mary for the care of their mother and that Michael had not reimbursed her for improvements Mary made to her house while caring for Marjorie. She also claimed that Michael had improperly dissipated property and mismanaged both parents' estates.

Personal representative Sue issued a disallowance of these claims on December 17, 2008, asserting that the claims were unfounded and time-barred. Mary petitioned for an extension in which to commence her claims. The superior court denied this petition on grounds that Mary's claims were barred by applicable statutes of limitations.

I would reverse, in part, the superior court's denial of Mary's petition for extension, because although statutes of limitations barred two of her three claims against all estates, her mismanagement claim was not barred by statutes of limitations.

## II. FACTS AND PROCEEDINGS

### A. Estate Of Andrew G. Horwath, Sr.

Andrew Sr.'s estate consists chiefly of two interim Southeast Alaska limited entry fishing permits.[4] Permanent issuance of An-

---

1. Alaska Statute 13.16.460 provides in relevant part that "[a]ll claims against a decedent's estate that arose before the death of the decedent ... if not barred earlier by other statute[s] of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented ... within four months after the date of the first publication of notice to creditors if notice is given in compliance with AS 13.16.450," or "within three years after the decedent's death, if notice to creditors has not been published."

2. *See* AS 13.16.460(b).

3. Sometimes written in the record as Marjory Horwath.

4. The permits are Sablefish Long Line Fishing Permit, Northern Southeast, Permit No. C61A52198 and Sablefish Long Line Fishing Permit, Southern Southeast, Permit No. C61C52199.

drew Sr.'s fishing permits has been denied by the Alaska Commercial Fisheries Entry Commission; thus, since his death in 1991, the permits can be fished but cannot be sold.[5] Interim permits were issued annually to Marjorie after Andrew Sr.'s death, but beginning in 1993 the permits were fished by son Michael pursuant to a power of attorney. Following Marjorie's death in 2001, interim permits were issued directly to Michael as PR of Andrew Sr.'s estate.

Several members of the family have served as PR for Andrew Sr.'s estate. The first PR appointed was daughter Margorie Ramsey in August 1991. The estate was administratively closed in 1994. Son Michael replaced Margorie Ramsey as PR in April 2002. The estate was again administratively closed in 2004, and upon Michael's death in 2007, daughters Mary and Sue petitioned to reopen Andrew Sr.'s estate and be appointed successor co-PRs. They were so appointed on April 30, 2007 and published notice to creditors once per week for three consecutive weeks in the Ketchikan Daily News from June 6 to June 20, 2007. Proof of publication was filed with the court on June 28, 2007. On January 28, 2008, following a hearing, Mary was removed as co-PR and Sue became the sole PR.

## B. Estate Of Marjorie Horwath

Widow Marjorie suffered from Alzheimer's disease and, following Andrew Sr.'s death, she moved to live with daughter Mary in Minnesota. In 1999 a Minnesota probate court established a conservatorship for Marjorie. Mary was appointed Conservator of the Person, and Michael was appointed Conservator of the Estate. This arrangement charged Mary with daily care of her mother, while Michael was to "pay the reasonable charges for the support and maintenance of the conservatee in the manner suitable to her station in life and the value of her estate." Specifically, under this Minnesota conservatorship arrangement, Mary was to receive $600 monthly from Marjorie's estate, payable by conservator Michael, as well as Marjorie's $398 monthly social security benefits; this $998 monthly sum was to be used by Mary to care for Marjorie. Meanwhile, Michael would continue to manage the fishing permits.[6]

On November 9, 2001, Marjorie died intestate in Minnesota at age 79. Michael applied in Alaska to be PR for her estate on April 9, 2002. Her remaining estate consisted solely of an unimproved residential lot north of Ketchikan, worth approximately $33,500. Michael obtained consent forms for his appointment as PR from all the Horwath children except Mary.[7] The record does not reflect Michael's actual appointment as PR for Marjorie's estate,[8] but her estate was administratively closed on April 7, 2004, listing Michael as PR.

Michael died in 2007. Following his death, daughter Sue petitioned to reopen Marjorie's estate and to be appointed successor PR in intestacy. Lacking consent from all her siblings, Sue filed a Request for Conversion to Petition for Adjudication of Intestacy, Determination of Heirs, and Appointment of Personal Representative in a Formal Proceeding on December 4, 2007. A hearing was scheduled for January 28, 2008 in Ketchikan.

At this January 2008 hearing, Mary testified that she believed there remained unpaid items that Michael had been required to pay in connection with her care of their mother

---

5. It appears that these interim permits continue to be issued pending the outcome of an administrative appeal before the Alaska Commercial Fisheries Limited Entry Commission concerning permanent issuance of the permits.

6. Michael was free to outsource the permits, fish them himself, hand them off to others, or to participate in any way in fishing them. Marjorie's conservatorship estate was to receive "not less than 30% of the gross payment."

7. Michael received consent forms from his three brothers John, William, and Andrew Jr., as well

as from two of his sisters, Margorie Ramsey and Sue. Mary did not consent to the appointment but was, according to Michael, "considering" doing so.

8. When Marjorie's estate was administratively closed on April 7, 2004, the closure listed Michael not as PR but as "other" representative. Sue's petition to reopen Marjorie's estate later stated that Michael "was never formally appointed [as PR] as a review of the file shows the necessary documents were not filed."

Marjorie in Minnesota; specifically, she mentioned $150,000 in home renovations and a figure of $15 per hour for Marjorie's care.

Following the January 2008 hearing, Sue was appointed PR for Marjorie's estate. Notice to creditors was published in the Ketchikan Daily News for three consecutive weeks, from April 2 to April 16, 2008. An affidavit of publication was not filed with the court until December 17, 2008, almost eight months later.

## C. Estate Of Michael Horwath

As previously stated, Michael Horwath administered his father's estate's interim fishing permits from 1993 until his own death on April 1, 2007 at age 55. Michael also acted as PR for Andrew Sr.'s estate from April 2002 until his death, served as conservator of Marjorie's estate during her final years, and applied to be PR for Marjorie's estate following her death, although it is not clear whether he was ever so appointed. Michael had a will, but died unmarried and without children.

Michael's will nominated Sue to be PR for his estate. She was so appointed on June 4, 2007. Notice to creditors was published in the Ketchikan Daily News for three consecutive weeks, from July 10 until July 24, 2007. An affidavit of publication does not appear to have been filed with the court.[9]

## D. Mary's Claims Against All Estates

On November 4, 2008, Mary filed written notice of claims against the estates of Andrew Sr., Marjorie, and Michael. At this time, Sue was sole PR for all three estates.

Mary's claims centered on allegedly unpaid expenses arising from her care of her mother Marjorie in Minnesota, as well as allegations of estate mismanagement by Michael during his tenure as PR. Specifically, Mary alleged that she was to be paid $500 per month to care for Marjorie, and that there was "failure to pay the monthly amounts for such care." She also alleged that she made home improvements totaling approximately $150,000 (with "the exact amount to be shown at trial") "for the specific benefit of" Marjorie. Lastly, she claimed that Michael had "dissipated property, assets, proceeds and profits, and failed to account for the same" in his management of the fishing permits and of their parents' property "to the detriment of [Mary] and her share of profits in the decedent parents' estates." Mary did not state which claim(s) applied to each estate. She alleged that her claims had been "stated in person in open court on January 29, 2008." [10] In addition to being filed with the court on November 4, 2008, Mary's notice of claims was served directly on Sue's attorneys.

On December 17, 2008, Sue, in her capacity as PR of each estate, filed a Notice of Disallowance of Claims in which she rejected Mary's claims as baseless and asserted that in any event they were barred by applicable statutes of limitations.

With respect to Mary's claim for unpaid compensation, the Notice of Disallowance of Claims stated first that the proper amount was in fact $600 per month (not $500 as Mary alleged), that this was "for payment of the usual, customary and day to day expenses of supporting and caring for the conservatee," that it was "not compensation," and that "[r]ecords prove that *all such payments were made*." (Emphasis added, internal quotation marks omitted.) Next, the Notice of Disallowance of Claims stated that Mary's claim was barred because it was not presented by Alaska's probate nonclaim statute, AS 13.16.460.[11] The Notice of Disallowance of

---

9. The affidavit was prepared and exists in the record, but only as a copy submitted with copies of affidavits for the other estates on December 17, 2008.

10. This date appears to be incorrect, since the hearing was held on January 28, 2008, not January 29—and no record exists of a hearing or other proceeding on January 29. Mary's attorney later made a second reference to a January

29 hearing, although this too appears to refer to the January 28 proceeding.

11. Alaska Statute 13.16.460 provides in relevant part that "[a]ll claims against a decedent's estate that arose before the death of the decedent ... if not barred earlier by other statute[s] of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented ... within four months after the date of the first publication of

Claims also stated that Mary's claim was presented outside the applicable statute of limitations periods and that her claim was unconnected to the estate of Andrew Sr.

With respect to Mary's claim for home improvement reimbursement, the Notice of Disallowance of Claims stated that no contract existed for such reimbursement. The Notice of Disallowance of Claims also stated, as above, that the claim was not presented in a timely manner and that no connection existed between this claim and the estate of Andrew Sr.

With respect to Mary's claim that Michael had dissipated funds, the Notice of Disallowance of Claims stated that it too was barred because it was not presented in a timely manner.[12]

The Notice of Disallowance of Claims concluded with a notice stating "YOU ARE HEREBY ADVISED that every claim which is disallowed in this notice is forever barred if you fail to file a petition for allowance in the Court or commence a proceeding against the personal representative within sixty (60) days of service of this notice."

On February 18, 2009—as this 60–day period ended—Mary petitioned under AS 13.16.465(3)[13] for an extension of time until March 6, 2009 in which to "commence" her claims. She argued that neither she nor her attorney had seen or received the April 2008 notice to creditors published in the Ketchi-

kan Daily News concerning Sue's appointment as PR for Marjorie's estate. In an affidavit by Mary's attorney supporting the petition for extension, the attorney stated "[t]he notice published by [Sue's attorney], without more, constitutes inadequate service under *Tulsa Prof. Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)."[14]

On February 23, 2009, Sue filed her opposition to Mary's petition for extension, arguing that each of Mary's claims was barred by a statute of limitations and that an extension was therefore inappropriate under AS 13.16.465(3), which provides that "in no event shall [any] extension run beyond the applicable statute of limitations."

Mary filed her commencement of claims on March 6, 2009.[15] On April 15, 2009 the superior court denied Mary's Petition for Extension "because extension would be beyond [the applicable] statute[s] of limitations." Mary filed a Motion for Reconsideration on May 1, 2009. This motion was deemed denied after 30 days pursuant to Alaska Civil Rule 77,[16] and this appeal followed.

## III. DISCUSSION

### A. Standard Of Review

We review for abuse of discretion a superior court's decision to grant or deny an extension of time.[17] "A court abuses its discretion

12. Sue's response states that she is represented by different counsel with respect to Michael's estate, and that her response only pertains to Andrew Sr.'s and Marjorie's estates. It does not appear that Sue's other counsel filed a response to Mary's claims with respect to Michael's estate; but in her opposition to Mary's motion for extension, Sue's original counsel did address the claims against Michael's estate.

13. Alaska Statute 13.16.465(3) provides in relevant part that "no proceeding on [a claim] may be commenced more than 60 days after the personal representative has mailed a notice of disallowance; but ... to avoid injustice the court, on petition, may order an extension of the 60–day period, but in no event shall the extension run beyond the applicable statute of limitations."

notice to creditors if notice is given in compliance with AS 13.16.450," or "within three years after the decedent's death, if notice to creditors has not been published."

14. This argument is not subsequently developed, either in the superior court or on appeal. *See infra* note 26 for a brief discussion of *Tulsa*.

15. This would have been the last acceptable date for filing, if her petition for extension had been granted.

16. Civil Rule 77(k)(4) states in relevant part that "[i]f [a] motion for reconsideration has not been ruled upon by the court within 30 days from the date of the filing of the motion, or within 30 days of the date of filing of a response requested by the court, whichever is later, the motion shall be taken as denied."

17. *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009) (citing *Dobrova v. State, Dep't of Revenue, Child Support Servs. Div.*, 171 P.3d 152, 156 (Alaska 2007); *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1297 (Alaska 1985)).

if it issues a decision that is arbitrary, capricious, manifestly unreasonable, or ... stems from an improper motive." [18]

Statutory interpretation is a question of law to which we apply our "independent judgment, interpreting the statute according to reason, practicality, and common sense." [19]

### B. Alaska Nonclaim Provisions And Notice Requirements

In 1972 Alaska adopted the Uniform Probate Code (U.P.C.) in its entirety.[20] Alaska Statute 13.16.465 dictates the manner in which claims against a decedent's estate must be presented. Section .465(2) provides in relevant part that "the commencement of the proceeding must occur within the time limited for presenting the claim." This in turn invokes Alaska's probate nonclaim statute, AS 13.16.460, which sets clear time limits as to when claims may be presented.[21]

Specifically, section .460 provides that claims arising *before the decedent's death* are barred (1) three years following death, or (2) if notice is published per section .450, within four months of the first publication of notice.[22] If a claim is barred earlier by another statute of limitations, however, that statutory bar controls.[23]

Any claim arising *after death* is barred unless presented "within four months after it arises," [24] unless it is based in contract, in which case it is barred unless presented "within four months after performance by the personal representative is due" [25] These U.P.C. provisions exist as originally adopted and have not been updated.[26]

---

**18.** *Id.* (citing *Dobrova,* 171 P.3d at 156) (internal quotation marks omitted).

**19.** *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.,* 189 P.3d 1032, 1036 (Alaska 2008) (citing *Grimm v. Wagoner,* 77 P.3d 423, 427 (Alaska 2003)).

**20.** SLA 1972, ch. 78, § 1.

**21.** I note that Alaska's probate limitations period by definition applies to most claims. Alaska Statute 13.06.050 defines claims to include "liabilities of the decedent or protected person, *whether arising in contract, in tort, or in another way,* and liabilities of the estate that arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration" but to exclude "estate or inheritance taxes, or demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate." (Emphasis added.)

**22.** Claims arising before death, "if not barred earlier by other statutes of limitations, are barred against the estate ... unless presented" either "(1) within four months after the date of the first publication of notice to creditors if notice is given in compliance with AS 13.16.450," or "(2) within three years after the decedent's death, if notice to creditors has not been published."

Alaska Statute 13.16.450, the notice provision, states in full:

Unless notice has already been given under this section, a personal representative upon appointment shall publish a notice once a week for three successive weeks in a newspaper of general circulation in the judicial district announcing the appointment and address and notifying creditors of the estate to present their claims within four months after the first publication of the notice or be forever barred.

**23.** AS 13.16.460(a).

**24.** AS 13.16.460(b)(2).

**25.** AS 13.16.460(b)(1). Section 460(c) provides further exceptions for mortgages, pledges, liens upon property, and tort claims covered by liability insurance.

**26.** Alaska is apparently the only state that, having adopted the Uniform Probate Code, still retains the original U.P.C. §§ 3–801 and 3–803 notice and nonclaim provisions—codified at AS 13.16.450 and .460, respectively—in the wake of the 1988 U.S. Supreme Court decision in *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (U.S. 1988).

In *Tulsa,* the U.S. Supreme Court held that with respect to known or reasonably ascertainable probate creditors, publication notice violated due process and direct personal notice must be provided. 485 U.S. at 491, 108 S.Ct. 1340.

It remains unclear whether *Tulsa* applies to the U.P.C., since the Oklahoma statute at issue in *Tulsa* directed considerably more state action than did the equivalent U.P.C. provisions. Nonetheless, after *Tulsa* many state legislatures adopted rules requiring actual notice to probate creditors. These include Alabama, Illinois, Kansas, Maryland, Minnesota, and Mississippi. *See* 755 Ala.Code § 43–2–61 (1975); Ill. Comp. Stat. Ann. 5/18–3, as amended by P.A. 86–815, § 1, eff. Sept. 7, 1989; Kan Stat. Ann. § 59–2239, amended by 2004 Kan. Sess. Laws, ch. 73, § 2 (2004); Md.Code Ann, Est. & Trusts §§ 7–103, 7–103.1; Minn.Stat. Ann § 524.3–801(b), as amended by 1989 Minn. Laws, c. 163, § 1 (1989) (subsequent amendments omitted); Miss.Code Ann § 91–7–

## C. Other Statutes Of Limitations

Two limitations periods are relevant here: AS 09.10.053, which provides a three-year period to bring contract claims, and AS 09.10.070, which provides two years to bring tort claims.[27] For claims arising before death, a four-month tolling period also applies, effectively extending each of these limitations periods by four months.[28] Finally, in each estate and for each claim, the earliest applicable limitations period—that is, either the probate nonclaim statute or the general tort or contract statute of limitations—governs.[29]

## D. Characterizing Mary's Claims Against All Estates

The superior court denied Mary's petition for an extension of time in which to commence claims "because extension would be beyond [the] statute[s] of limitations." Mary argues chiefly that publication notice was insufficient to trigger the nonclaim statute time bars. Mary seems to suggest that she was entitled to personal notice and argues that, in any event, Sue should have filed proof of publication of notice to creditors to the court. Sue counters that proof of publication was eventually filed but maintains that in any case the claims are precluded under other statutes of limitations.

Mary did not specify which claim(s) applied to each estate, so I interpret each claim as applying to all three estates. Two of Mary's three claims involve payment disputes arising from the conservatorship arrangement for Marjorie.

First, Mary alleges that as conservator of Marjorie's estate, Michael failed to make certain monthly payments as required under the conservatorship order. The conservatorship order stipulated that Michael (conservator of Marjorie's estate) pay $600 per month "[f]rom the funds of the conservatee, *as available*," to Mary (conservator of Marjorie's person). (Emphasis added.) The correct characterization of Mary's first claim seems to be as a breach of fiduciary duty, because—if Mary can prove that sufficient funds were indeed available in Marjorie's estate, but withheld by Michael—Michael

145, amended by 1994 Miss. Laws, ch. 430, § 1 (March 17, 1994); *see also Martel v. Stafford*, 157 Vt. 604, 603 A.2d 345, 349 n. 8 (1991) ("Maryland law now requires personal notice to creditors, although the requirement was added after the [*Tulsa*] decision."); *In re Estate of Petrick*, 635 So.2d 1389, 1393 (Miss.1994) ("The Mississippi statute, enacted shortly after [*Tulsa*], clearly requires an administratrix to give creditors who can be discovered through reasonably diligent efforts notice by mail and notice by publication.").

Moreover, Alaska appears to be alone in retaining original U.P.C. notice and nonclaim provisions post-*Tulsa*. Alaska has adopted other U.P.C. revisions, such as the 1990 Revision of U.P.C. Article II and the 1989 Revision of U.P.C. Article VI. *See, e.g.*, AS 13.12.802 (U.P.C. § 2–802, a part of Article II), SLA 1996, ch. 75, § 3; AS 13.33.101 (U.P.C. § 6–101, a part of Article VI), SLA 1996, ch. 75, § 12, amended by SLA 2008, ch. 100, § 3. These recent amendments indicate that the Alaska legislature has adopted various updated provisions of the U.P.C., just not the notice or nonclaim provisions.

I do not address the sufficiency of publication notice here because neither party explicitly raises this issue on appeal; Mary's attorney mentioned *Tulsa* in a cursory manner in an affidavit supporting Mary's petition for extension. The issue, if it was presented at all in the superior court, would be deemed waived on appeal. *See Mullins v. Oates*, 179 P.3d 930, 941 n. 31 (Alaska 2008) (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("cursory treatment of an issue is considered by this court to be waiver of that issue")). Nonetheless, I note that the legislature may wish to revisit AS 13.16.450 and .460 in light of *Tulsa*.

27. Presentation of a claim is sufficient to commence a proceeding. AS 13.16.455 provides that "[f]or purposes of any statute of limitations, the proper presentation of a claim under AS 13.16.465 is equivalent to commencement of a proceeding on the claim."

28. AS 13.16.455 provides in relevant part that "[t]he running of any statute of limitations measured from some other event than death and advertisement for claims against a decedent is suspended during the four months following the decedent's death but resumes thereafter as to claims not barred pursuant to the sections that follow."

29. AS 13.16.455 corresponds to U.P.C. § 3–802. The comment to this U.P.C. section provides that "the first of the [applicable statutes of limitations] to accomplish a bar controls." Also, Alaska's nonclaim statute explicitly provides that claims arising before death are barred unless presented within four months of the date of first publication of notice to creditors, or within three years of death if notice is not published, *"if not barred earlier* by other statute[s] of limitations." AS 13.16.460(a) (emphasis added).

may have breached his duty as conservator of Marjorie's estate, which would sound in tort.[30] Thus, the applicable limitations period is two years under AS 09.10.070, with a potential four-month tolling period under AS 13.16.455. The latest possible accrual date[31] for this claim is November 9, 2001, the date Marjorie died.

Regarding Mary's second claim, that Michael failed to reimburse her for home improvements, the conservatorship order makes no mention of any home improvements; Mary appears to have undertaken any such improvements under her own initiative. Thus, quasi-contract or unjust enrichment appear to be the proper characterization of her home improvement claim—both of which sound in contract. The applicable limitations period for contract claims is three years under AS 09.10.053, with a potential four-month tolling period under AS 13.16.455. Like the first claim, the latest possible accrual date for the second claim is November 9, 2001, when Marjorie died.

Mary's third claim concerns Michael's alleged mismanagement of his parents' estates, a claim sounding in tort and governed by the two-year statute of limitations.[32] Thus, the applicable limitations period is two years under AS 09.10.070, with a potential four-month

tolling period under AS 13.16.455. Because it alleged Michael's mismanagement of estate funds, the last possible date on which the third claim could arise is the date of Michael's death, which occurred on April 1, 2007.

### E. The Superior Court Did Not Err In Denying Mary's Petition For Extension Of Time With Respect To Mary's First And Second Claims.

Mary presented all three claims on November 4, 2008. Mary's first and second claims—for monthly support and home improvements—as asserted against Andrew Sr.'s estate, arose after Andrew Sr.'s death in 1991. Marjorie moved to Minnesota to live with Mary in 1995, and the conservatorship was not instituted until 1999. Using the latest possible accrual date of November 9, 2001 (Marjorie's death),[33] Mary's first and second claims were therefore barred four months after they arose per AS 13.16.460(b) [34] (i.e., March 9, 2002). The first claim is doubly barred as of November 9, 2003 (two-year bar on tort claims per AS 09.10.070) and the second as of November 9, 2004 (three-year bar on contract claims per AS 09.10.053). Thus, both claims are barred against Andrew Sr.'s estate well before they were presented on November 4, 2008.

---

**30.** A conservator generally assumes fiduciary duty. *See, e.g., H.C.S. v. Cmty. Advocacy Project of Alaska, Inc. ex rel. H.L.S.,* 42 P.3d 1093, 1096 (Alaska 2002) (quoting a since-amended statutory passage applicable to "a conservator, guardian of property, *or other like fiduciary* ") (emphasis added).

**31.** A claim's accrual date denotes the date on which the underlying event that triggers the claim occurred.

**32.** Alaska Statute 13.16.395 provides in relevant part that "[i]f the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of fiduciary duty to the same extent as a trustee of an express trust." We have held that to impose liability under section 395, "there must be findings that (1) there was an improper exercise of power, (2) there was damage or loss to the party to whom the personal representative is liable, and (3) this damage or loss resulted from a breach of a fiduciary duty." *Gudschinsky v. Hartill,* 815 P.2d 851, 853 (Alaska 1991) (internal quotation marks omitted).

This third claim could also be interpreted as an action to surcharge Michael as personal rep-

resentative, *see* AS 13.16.485 ("Issues of liability as between the estate and the personal representative individually may be determined in a proceeding for accounting, surcharge, or indemnification or other appropriate proceeding"), although the underlying tort would be the same.

**33.** Because Mary's first and second claims concern monthly support and home improvements connected to Mary's care of Marjorie under the Minnesota conservatorship order, the last possible accrual date for these claims is Marjorie's death—even though these claims, as discussed here, are asserted against Andrew Sr.'s estate.

**34.** Alaska Statute 13.16.460(b) provides:

All claims against a decedent's estate that arise at or after the death of the decedent ... are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) a claim based on a contract with the personal representative, within four months after performance by the personal representative is due;

(2) any other claim, within four months after it arises.

Mary's first and second claims are similarly barred against Marjorie's and Michael's estates, with the chief difference being that claims one and two arose *before* Marjorie's and Michael's deaths. Thus, with respect to these two estates, these two claims are governed by AS 13.16.460(a) as opposed to .460(b),[35] and a four-month tolling period must be added to the tort and contract statutes of limitations per AS 13.16.455. Even so, Mary's monthly support and home improvement claims are again barred by the operation of non-probate statutes of limitations: the home improvement claim was barred as of March 9, 2005 (last accrual date being Marjorie's death on November 9, 2001; I add three years per AS 09.10.053 and four months per AS 13.16.455), and the monthly support claim was barred as of March 9, 2004 (same date arising; I add two years per AS 09.10.070 and four months per AS 13.16.455). Thus, both claims were barred against Marjorie's and Michael's estates well before they were presented on November 4, 2008.

The superior court therefore did not err in holding that Mary's first two claims were barred against all three estates by statutes of limitations.

### F. It Was Error To Deny Mary's Petition For Extension Of Time With Respect To Her Third Claim.

Mary's third claim, concerning Michael's alleged mismanagement of Andrew Sr.'s and Marjorie's estates, was not yet barred by non-probate statutes of limitations at the time it was filed, and it was error to so hold.

This third claim necessarily arose after Andrew Sr.'s death, since it concerns Michael's administration of Andrew Sr.'s and Marjorie's estates. It may have arisen before or after Marjorie's death, but it necessarily could not have arisen after Michael's death. Using the latest possible accrual date of April 1, 2007 (Michael's death), it would be barred by the tort statute of limitations at latest on April 1, 2009 against Andrew Sr.'s estate (two years per AS 09.10.070, no additional four months per AS 13.16.455), and on August 1, 2009 against Marjorie's and Michael's estates (two years per AS 09.10.070, plus four months per AS 13.16.455). Mary's claims were presented before these two dates, on November 4, 2008.

It was therefore erroneous, and an abuse of discretion, to deny Mary's petition for extension on grounds that such "extension would be beyond [the applicable] statute[s] of limitations."[36] I would remand this case and require the superior court to consider Mary's third claim concerning Michael's alleged mismanagement of Andrew Sr.'s and Marjorie's estates. In particular, the court should determine which estate, if any, this claim is properly asserted against; whether notice was adequate to trigger the nonclaim bar,

---

**35.** Alaska Statute 13.16.460(a) governs claims against a decedent's estate that arose before the death of the decedent, and provides that such claims,

> if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
> (1) within four months after the date of the first publication of notice to creditors if notice is given in compliance with AS 13.16.450; however, claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state;
> (2) within three years after the decedent's death, if notice to creditors has not been published.

**36.** Although it functions similarly to a statute of limitations, the probate nonclaim statute, AS 13.16.460, is not itself generally referred to as "a statute of limitations." *See Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 212–13 (Alaska 1982) ("Stat-

utes such as § 460 are commonly called nonclaim statutes" although they function similarly to statutes of limitations.); *see also* 1 UNIFORM PROBATE CODE PRACTICE MANUAL 325 (2d ed. 1977) (distinguishing between nonclaim provisions and statutes of limitation: "[T]he regular statute of limitations applicable during the debtor's lifetime, the nonclaim provisions of Sections 3–803 and 3–804, and the three-year limitation of Section 3–803 all have potential application to a claim. The first of the three to accomplish a bar controls."); *id.* at 328 ("[I]t is important to remember that a regular statute of limitation may run to bar a claim before the nonclaim provisions run."). As such, I interpret the superior court's denial of Mary's petition for extension at face value—namely, I interpret the superior court's order as denying the petition for extension on the basis that the claims are barred by statutes of limitations, not on the basis of preclusion of claims by the probate nonclaim statute.

and the timing of Mary's awareness of the claim.

## IV. CONCLUSION

I would affirm the superior court's denial of Mary's petition for extension as it applies to Mary's first and second claims against all estates because statutes of limitations bar these claims, and to this extent I concur in the result of the court's opinion. I would reverse that portion of the denial as it applies to Mary's third claim concerning Michael's alleged mismanagement of Andrew Sr.'s and Marjorie's estates because this claim was not barred by statutes of limitations, and I would remand for further proceedings. To this extent, I dissent from the court's opinion.