In the Matter of the ESTATE of
Albert KRAFT, Deceased.

Faye KRAFT, Appellant,

v.

Emil KRAFT, Appellee.

No. 175.

Supreme Court of Alaska.

Sept. 11, 1962.

---

9. Cawog v. Rothbaum, 165 Cal.App.2d 577, 331 P.2d 1063, 1071 (1958); Prosser, op. cit. supra note 8, at 290.

J. L. McCarrey, Jr., and William A. Hilton, Anchorage, for appellant.

John S. Mansuy, Jr., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Albert Kraft died on December 30, 1960, from alcoholism and cancer. A will purportedly executed by him the same day was offered for probate by the named executor, Emil Kraft, brother of decedent and appellee on this appeal. One third of decedent's property was left to his wife, and the residue to a daughter by a previous marriage. The wife, Faye Kraft, filed a petition contesting the will. After a hearing, the court found she had failed to establish any grounds for contest, and ordered that the will be admitted to probate. Faye Kraft has appealed. There are three questions presented: (1) whether the statutory requirement of attestation of the will was complied with; (2) whether decedent possessed testamentary capacity at the time the will was executed; and (3) whether he had acted at that time under undue influence exercised by Emil Kraft or other members of the Kraft family.

### 1. Attestation.

It is essential to the validity of a will that it "be attested to by two or more competent witnesses, subscribing their names to the will in the presence of the testator * * *." [1] The appellant, Faye Kraft, contends that this requirement was not met. She argues that there is no proof that Bennett, one of the persons whose name appears as a witness, actually attested the will; or that if attestation by Bennett and the other witness, Shannon, was established, there is no proof that it was done in the testator's presence and at his request.

Bennett was a long time friend of the testator and spent a great deal of time with him at the hospital on the day of his death. He testified that the will was given to him to take to Kraft; that he promptly went into Kraft's room and read it to him; that later he asked Shannon, who was on the hospital floor, to act as a witness; that he told Kraft that Shannon (who was in the room at the time) was there to witness the signing of the will, whereupon Kraft acknowledged this by saying "Yes, I know"; and that Kraft then signed the will. [2]

Bennett did not testify that it was his signature that appeared following the attestation clause in the will. But at the hearing both parties and the court apparently took it for granted that there was no dispute on this point. At one point the judge, in asking Bennett a question, referred to him as "one of the subscribing witnesses to this Will." When Shannon was testifying under cross-examination by appellant's counsel, he was asked "Who signed it [the will] first you or Mr. Bennett?", and he answered "I did." Bennett's narrative of the series of events leading up to the execution of the will makes it highly unlikely that the signature "J. G. Bennett", appearing in the attestation clause, was that of some other person. At no time during the proceedings in the court below did counsel for appellant even suggest doubt as to the genuineness of this signature.

In these circumstances, we hold that attestation of the will by Bennett was judicially admitted by appellant by reason of her failure to raise this as an issue, either in her contesting petition or in her cross-

1. Section 59-2-2 A.C.L.A.1949.

2. Kraft's signature was totally illegible because of a tremor resulting from his illness. However, the court found that decedent had intended it to be his signature, and therefore that it was valid as a signature even though unreadable. This aspect of the case was not made an issue on this appeal.

examination of Bennett at the hearing below.

Appellant argues that even if Bennett did sign the document, it was not proved that he did this while in the hospital room—the only place where he could have been "in the presence of the testator" as required by law.[3] It is true there was no direct testimony on this point. But appellant's admission that Bennett did sign as a witness in the testator's presence is implicit in her failure to deny that fact, and in her counsel's question to Shannon where he inquired as to who had signed the document first, Shannon or Bennett.[4]

■ At the time the will was executed Kraft was extremely ill and dying from acute alcoholism and cancer. He was under sedation and had been given about two ounces of whiskey. In these circumstances appellant asserts that he could not have known what he was doing, and therefore the attestation of the will could not have taken place in his presence.[5]

There was evidence enough to support a finding that Kraft was aware of the fact he was executing his will and that Bennett and Shannon were attesting such execution. Bennett testified that after he read the will to Kraft, the latter "just sort of nodded his head and wanted to proceed to sign it"; that when he told Kraft that Shannon was there to sign the will, Kraft said "Yes, I know"; that after Kraft had spent about five minutes in placing an illegible signature on the document and had returned it to Bennett, he asked Bennett to give the will back to him, stating "I forgot to cross the 't'"; and that he was able to speak coherently and knew what he was doing. Shan-

non testified that when he told Kraft he was there to witness the signing of the will, Kraft acknowledged this by nodding his head; that Kraft knew him and spoke to him; and that Kraft appeared to know what he was doing.

There is nothing in the record indicating that the testimony of these witnesses was unworthy of belief. The court was justified in accepting what they said as being the truth, and in finding that the will had been attested to by them in the presence of the testator in accordance with the statutory requirement.

■ The contention is also made that the attestation was deficient because not done at Kraft's request. The answer to this is that a request was unnecessary, since the statute requires only that the witnesses subscribe their names in the testator's presence.[6] That requirement was met, since Bennett and Shannon were in the same room with Kraft when the will was executed by him and witnessed by them, and Kraft knew what he was doing and knew that they were there to act as witnesses to the execution of the will. Nothing more was required.[7]

### 2. Testamentary Capacity.

Appellant argues that because of Kraft's extreme illness and the sedation and whiskey which had been given to him on the day of his death, he did not have the physical capacity nor the mental apprehension to make a valid will.

■■ Disease, great weakness, the use of alcohol and drugs, and approaching death do not alone render a testator incompetent to make a will. The question is always

---

3. Section 59-2-2 A.C.L.A.1949.

4. Shannon had testified that he signed as a witness to the will while in the hospital room with Bennett and Kraft.

5. In support of this proposition, appellant cites 2 Bowe-Parker: Page on Wills § 19.121 (1960) where it is stated, at 232: "The person in whose presence a given act is done must have sufficient mental capacity to know that the act is being done. If a person is so faint that

he is not able to know what is being done, or if he is asleep, or in a stupor, or dying, the act cannot be done in his presence, no matter how close to him it may be done."

6. Section 59-2-2 A.C.L.A.1949. In re Burnham's Will, 24 Colo.App. 131, 134 P. 254, 258 (1913); Annot., 125 A.L.R. 414, 418-419 (1940).

7. See In re Meier's Estate, 190 Or. 140, 224 P.2d 572, 575 (1950).

whether, in spite of these things, he had sufficient mental capacity to understand the nature and extent of his property, the natural or proper objects of his bounty, and the nature of his testamentary act.[8] In discussing earlier in this opinion the point as to whether the will had been attested to in the testator's presence, we held there was evidence enough to support a finding that he was aware of the fact he was executing his will and that Bennett and Shannon were witnessing that act. If he had this much mental capacity, then since the will had been read to him and he appeared to understand it, it was reasonable for the court to conclude that he also had an awareness of the fact that he was making a final disposition of all his property, and that he was dividing it between his wife and daughter who were the natural objects of his bounty.

Appellant made an effort to establish lack of testamentary capacity by calling as witnesses two physicians who had attended Kraft during his illness. But neither was able to give a definite opinion on this issue one way or the other. Dr. Johnson was asked whether decedent would be competent, in the afternoon of his death, to make a decision how he wanted to dispose of his property. The doctor's answer was: "I wish I could give you a straightforward answer on that question, I honestly don't know." Dr. Keers was asked if he had an opinion as to whether decedent was of sufficient mind and memory to understand the nature and extent of his property, the proper objects of his bounty, and the nature of his testamentary act. The doctor's reply was:

> "Yes, I have an opinion, I—I'd say it might be—the answer might be either he had or he hadn't—it would be—it would be difficult to say with any degree of assurance whether or not the man was able to understand."

Appellant also testified in her own behalf. She said that when she visited her husband in the hospital on the day prior to his death, he was being given oxygen because of difficulty in breathing, was unconscious, and was not lucid or rational. On the other hand, the witnesses Shannon and Bennett saw Kraft the following day when the will was signed, and their testimony was that he was conscious and knew what he was doing.

■ A decision of the issue as to testamentary capacity depended largely, if not entirely, on oral testimony given by witnesses seen and heard by the trial judge. It was his province to judge their credibility, and we may not reverse his decision unless we find it to be clearly erroneous.[9] We cannot make such a finding on the record of this case.

### 3. Undue Influence.

Appellant contends that undue influence was exerted on the testator to make the will that he did. This charge is levelled principally against Walter Kraft, the testator's nephew, and also against other members of the Kraft family.

The judge found there was no evidence at all of undue influence. A review of the record convinces us that his determination was correct. Walter Kraft had drawn the will on the day of his uncle's death, in accordance with wishes the latter had expressed about two months previously. He testified that he had no personal interest in the matter, and was only interested in carrying out his uncle's desires. He was not a beneficiary under the will and was not present when it was executed. Emil Kraft, brother of the testator, did not benefit from the will and had nothing to do with its preparation or execution. The testator's daughter, Myrna Kelly, was a beneficiary. But she had nothing to do with the preparation or execution of the will and, in fact,

8. 1 Bowe-Parker: Page on Wills §§ 12.-39, 12.43 (1960), citing numerous authorities.

9. Nordin v. Zimmer, Opinion No. 96, 373 P.2d 738 (Alaska, 1962).

was not in Kodiak, the place of her father's death, on the day that he died.

 There is nothing here which indicates the existence of any undue influence. Appellant has failed to sustain her burden of proving that by reason of influence exercised by another, the testator was virtually compelled to make a will which he would not have made had he been left to the free exercise of his own judgment and wishes.[10]

The judgment is affirmed.

10. 1 Bowe-Parker: Page on Wills § 15.2, at 714–715, (1960), citing numerous authorities. See Mackall v. Mackall, 135 U.S. 167, 172, 10 S.Ct. 705, 34 L.Ed. 84, 86 (1890); Creighton v. Creighton, 261 F. 333, 335 (8th Cir. 1919). Mann v. Cornish, 87 U.S.App.D.C. 110, 185 F. 2d 423 (1950), cert. denied, 341 U.S. 932, 71 S.Ct. 802, 95 L.Ed. 1361 (1951) (burden of proof on one who alleges undue influence).