*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | Supreme Court No. S-15582 |
| OFFENESIA YAKO BAVILLA, | ) | |
| | ) | Superior Court No. 3AN-12-01316 PR |
| Deceased. | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | No. 6985 – March 6, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Etta Marie Bavilla, pro se, Eagle River, Appellant.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.     INTRODUCTION

This appeal arises from Etta Bavilla's attempt to informally probate the 1987 will of her mother, Offenesia Bavilla. Because Offenesia signed a new will in 2006, the superior court did not accept Etta's informal probate of the 1987 will. Etta, a pro se litigant, attempted to contest the validity of the 2006 will by filing a motion to amend her probate of the 1987 will to include a challenge to the 2006 will. Her motion to amend was denied, as was her motion for recusal of the magistrate judge who recommended denial of that amendment. On appeal, Etta challenges the superior court's

denial of her motion to amend her pleadings and the magistrate judge's decision not to recuse himself. We remand for the superior court to allow Etta to amend her pleadings but affirm the magistrate judge's decision not to recuse himself.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Offenesia Yako Bavilla died in 2010. She was an Alaska Native woman who lived in Dillingham and had two children, Etta and Steven.[1] In 1987 Offenesia executed a will that left most of her assets to Etta and Steven. In the mid-2000s Offenesia was elderly and slipping mentally. In November 2005 a doctor at the Bristol Bay Area Health Corporation wrote that Offenesia's "mental status has declined significantly," that she "has become nearly mute," and that she "appears to hallucinate." The doctor concluded that "[d]ue to her dementia, her condition is quite likely to continue to deteriorate."

In February 2006 Offenesia executed a new will, which was prepared by Alaska Legal Services Corporation.[2] The new will was witnessed by individuals who worked at the elder care facility where Offenesia resided. This new will eliminated Etta from any inheritance but still included her brother, Steven. The 2006 will included a statement explicitly "revoking all prior wills and codicils."

### B.    Proceedings

In June 2012 Etta applied for informal probate of the 1987 will. Etta noted in her application that the 1987 will was followed by a 2006 will, but she asserted that

---

[1]    The filings and proceedings variously refer to Steven as "Steven," "Stephen," and "Stephan." This opinion refers to him as Steven since that is how both the 1987 and 2006 wills list his name.

[2]    The will includes a certification that it had been translated into the Yupik language.

the 2006 will was invalid.[3]  Based on this, Magistrate Judge John Duggan, acting in his capacity as a probate master, held a status hearing in early November 2012.  Etta participated in the hearing telephonically because she was incarcerated at the Hiland Mountain Correctional Center.  Magistrate Judge Duggan told Etta that he could not admit Offenesia's 1987 will for probate "until [the court] ha[d] a copy of that 2006 will" and could "make a determination that that will is invalid."

When Etta asked about the specific process she would need to follow for this determination, Magistrate Judge Duggan responded that "[i]f there is a second will, that has to be filed with the court, [and] if it is after 1987, . . . then there has to be a court hearing and you can present evidence why that will should not be admitted [and] why it is not valid."  Magistrate Judge Duggan noted that the 1987 will did not nominate Etta as the personal representative and that the two individuals so named had not renounced their appointment; he warned that the court could not consider Etta's probate application "until we hear something from them."[4]  Magistrate Judge Duggan also told Etta that she would have to file "a waiver in renunciation of the nomination" and that he did not have authority to grant her request for a court-appointed attorney to represent her.  The application for informal probate of the 1987 will was left open pending further filings.

---

[3]      The application stated that "[t]o the best of Applicant's knowledge, [the 1987] Will was validly executed, and, after the exercise of reasonable diligence, applicant is unaware of any valid instrument revoking said Will, although a subsequent invalid will was executed in February of 2006.  Applicant believes that the [1987] Will is the decedent's last valid Will."  At a subsequent status hearing on her petition, Etta alleged that the 2006 will was "illegally crafted" by her brother, Steven, and the director of the elder care home where Offenesia was living when Offenesia signed the 2006 will, for which the director served as a witness.

[4]      The 1987 will nominated Patty Heyano as personal representative, or Janet Hannahs Hiratsuka if Ms. Heyano is unable to serve.  The 2006 will nominated Etta's brother, Steven, to be the executor and personal representative.

In late November 2012 Etta filed a motion asking that the 2006 will be declared invalid and that her brother Steven "lose all rights to inheritance" described in the 1987 will. Etta served Steven and Alaska Legal Services Corporation by regular mail. Etta attached a number of documents to the motion, including copies of the 2006 will and the November 2005 letter from a doctor with the Bristol Bay Area Health Corporation describing Offenesia's declining mental state.[5] Etta indicated that although neither Steven nor any personal representatives or executors named in the 2006 will had yet entered that will into probate, they had "accessed/utilized assets of the estate." The documents indicate that Offenesia's Native corporation stock was transferred in accordance with the 2006 will to Steven and to Offenesia's great-niece, Clara Torsen.[6]

In response to Etta's November 2012 motion, Magistrate Judge Duggan held another hearing in January 2013. Magistrate Judge Duggan told Etta during the January 2013 telephonic hearing that he could not determine the precise relief her motion was requesting. Etta explained that she was attempting to invalidate the 2006 will and have the 1987 will declared Offenesia's true will. Etta argued that Offenesia was not

---

[5] The attachments also included an Emergency Physician Record from January 2006, when Offenesia was brought to a hospital in part due to her "mental status changes." The physical exam record indicated that Offenesia was known to have dementia.

[6] Etta contacted Bristol Bay Corporate Services (BBCS) to challenge this transfer based on Offenesia's dementia, which had been diagnosed before she executed the 2006 will. In June 2011 BBCS responded that, based on its investigation into Etta's claim ("including contacting Alaska Legal Services who assisted [Etta's] mother in executing her will"), BBCS made a "good faith determination that [Etta's] mother's stock will executed in 2006 was validly executed and BBCS found no evidence of undue influence or duress." BBCS indicated that it would distribute Offenesia's shares in accordance with the 2006 will. BBCS noted that if Etta disagreed with its determination, she had "the right to bring a claim in the Superior Court in accordance with Alaska Statute Section 13.16.[0]70."

competent to execute a will in 2006, that the 2006 will was the result of undue influence by Steven and individuals working at the elder care home where Offenesia had been living (who served as witnesses to the will), and that those witnesses had a conflict of interest. Magistrate Judge Duggan then told Etta that she would need to file a "separate proceeding" to invalidate the 2006 will. He suggested that Etta consult an attorney and denied Etta's request for court-appointed counsel. Magistrate Judge Duggan concluded the conference by informing Etta that her application for informal probate of the 1987 will was denied without prejudice.

In May 2013 Etta filed two motions. First, she asked for leave to file an amended pleading to contest the 2006 will. Her motion requested that she "be allowed to amend [her] original pleading and contest the 2nd will of decedent" based on "possible illegal activity and misrepresentation involved with the decedent's 2nd will." Second, Etta filed a motion to disqualify Magistrate Judge Duggan on the grounds that he was "biased and prejudiced" toward her. In mid-June 2013 Magistrate Judge Duggan signed two orders: one recommending denial of the disqualification motion and a second recommending denying without prejudice Etta's original application to probate the 1987 will, which the order stated was revoked by the 2006 will.

Two weeks later Magistrate Judge James Stanley signed an order recommending that Etta's motion to amend be denied. The recommendation stated that a January 2013 court order, issued after Magistrate Judge Duggan's second status conference, "ruled that the 1987 will, [the] subject of the petition filed [June 21, 2012], had been revoked when the decedent executed a new will in 2006." The order stated that Etta "cannot now use this action as a forum to invalidate the 2006 will." The order noted that "petitioner may wish to commence an action in Superior Court" to contest the 2006 will.

In April 2014 Superior Court Judge Patrick J. McKay issued two final orders: one approving Magistrate Judge Duggan's decision not to recuse himself and a second approving and adopting Magistrate Judge Stanley's recommendation to deny Etta's motion to amend her pleadings to contest the 2006 will. The order approving Magistrate Judge Duggan's decision not to recuse himself concluded that, after a review of the pleadings, Etta's recusal request was "not supported by any evidence of bias on the part of Master Duggan," but rather reflected that Etta was "unhappy with Master Duggan's decision and orders." The order stated that "[t]his is not a ground for recusal and the Court sees no further grounds requiring recusal." Judge McKay's second order adopted Magistrate Judge Stanley's recommendation to deny Etta's motion to amend without further discussion.

Etta has appealed these final orders, arguing that the superior court erred by denying her motion to amend her original pleading to contest the 2006 will and by not investigating her claim that the 2006 will "was crafted and drafted possibly through illegal means."[7] She contends that Offenesia was not competent to execute a will in 2006 and asserts that the witnesses to the 2006 will had conflicts of interest. She also requests that Judge McKay, Magistrate Judge Duggan, and Magistrate Judge Stanley be barred

---

[7]     Etta's brief on appeal also asserts that the superior court "erred in the facts" and in ignoring her claim that her brother and her mother's caretakers engaged in criminal and fraudulent conduct. Etta also suggests that the superior court erred by not holding Steven responsible for "any or all illegalities" regarding the 2006 will. But none of these issues is properly before us since they were not addressed in the rulings below and this decision only considers whether Etta may proceed as a procedural matter and does not consider the merits of Etta's claims. *See Hoffman Const. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001) ("[W]e will not consider arguments that were not raised below, unless the issues establish plain error, or the issues (1) do not depend upon new facts, (2) are closely related to other arguments at trial, and (3) could have been gleaned from the pleadings.").

from presiding over her case based on their alleged discrimination against her and refusal to appoint counsel for her.

## III.  STANDARD OF REVIEW

"We review a superior court's denial of a motion to amend a complaint for abuse of discretion.  It is within a trial court's discretion to deny such a motion where amendment would be futile because it advances a claim or defense that is legally insufficient on its face."[8]  "We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend."[9]  "The refusal by a judge to be recused from a case is reviewed for an abuse of discretion."[10]

## IV.  DISCUSSION

### A.  The Superior Court Should Have Allowed Etta To Amend Her Original Pleading — Informal Probate Of The 1987 Will — To Contest The 2006 Will.

The primary question in this appeal is whether the superior court should have allowed Etta to amend her application for informal probate of Offenesia's 1987 will to contest Offenesia's 2006 will.  Under Alaska Civil Rule 15(a), leave to amend "shall be freely given when justice so requires."  We have recognized that absent "apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

---

[8]     *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010) (citations and internal quotation marks omitted).

[9]     *Id.* at 177.

[10]    *Jourdan v. Nationsbanc Mortg. Corp.*, 42 P.3d 1072, 1082 (Alaska 2002).

amendment, etc. — the leave sought should, as the rules require, be freely given."[11] Additionally, "the pleadings of pro se litigants should be held to less stringent standards than those of lawyers."[12] As discussed below, none of the exceptions to Rule 15(a) apply to this case. As a result, the superior court abused its discretion by denying Etta's motion to amend her pleading to contest Offenesia's 2006 will.

First, Etta's actions do not fall within the Rule 15(a) exception regarding "futility of amendment."[13] While it is within the superior court's discretion to deny a motion to amend "where amendment would be futile because it advances a claim or defense that is legally insufficient on its face,"[14] Etta's proposed amendments do not appear to be legally insufficient; rather, the merits of her challenge to the validity of the 2006 will turn on factual findings that the superior court has not yet made.[15] If the facts are as Etta alleges, her claim would not be legally insufficient on its face.

To contest a will, as Etta sought to do here, a party must initiate a formal probate proceeding.[16] Though Etta initially filed her claim as an informal probate

---

[11]    *Miller v. Safeway, Inc.*, 102 P.3d 282, 294 (Alaska 2004) (quoting *Betz v. Chena Hot Springs Grp.*, 742 P.2d 1346, 1348 (Alaska 1987)) (internal quotation marks omitted).

[12]    *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

[13]    *See, e.g.*, AS 13.16.040(a) ("An informal probate . . . may not be commenced more than three years after the decedent's death . . . .").

[14]    *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010) (quoting *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004)) (internal quotation marks omitted).

[15]    *Cf. Crittell v. Bingo*, 36 P.3d 634, 638 (Alaska 2001) ("Issues of testamentary capacity and undue influence involve questions of fact . . . .").

[16]    *See* AS 13.16.140(a) ("A formal testacy proceeding is litigation to
(continued...)

proceeding, there is no statutory bar precluding the superior court from converting an informal probate proceeding to a formal one.[17] The Uniform Probate Code, which Alaska adopted in its entirety in 1972,[18] is silent on how to convert an informal probate proceeding into a formal one, but nothing in the Code prevents such conversion.[19] In *Riddell v. Edwards*, we recognized that "in deciding claims arising under the probate code, a court may exercise its equitable powers unless explicitly forbidden to do so."[20] Moreover, "Alaska's Uniform Probate Code generally gives trial courts broad latitude to supplement statutory provisions with equitable principles."[21] There is also no statutory

---

[16](...continued) determine whether a decedent left a valid will."); *cf. In re Estate of Bell*, 4 P.3d 504, 506 (Colo. App. 2000) (holding that doctrine of res judicata did not bar caregivers' challenge to validity of will in formal probate proceeding because the caregivers' challenge could not have been litigated in prior informal proceeding); EUNICE L. ROSS & THOMAS J. REED, *Will Contests* § 12:17 (2d ed. 2014) ("Will contests are initiated by petition or objections filed with the court and result in formal testacy proceedings.").

[17] *See Fields v. Fields*, 219 P.3d 995, 1005 (Alaska 2009) (rejecting the misconception that there is a difference between the probate court and the superior court and explaining that when Alaska adopted the Uniform Probate Code it placed subject matter jurisdiction for probate matters in the superior court).

[18] *See Jaworski v. Estates of Horwath ex rel. Streets*, 277 P.3d 753, 759 (Alaska 2012) (citing ch. 78, § 1, SLA 1972).

[19] *See* AS 13.16.120 ("If the Registrar is not satisfied that a will is entitled to be probated in informal proceedings . . . , he may decline the application. A declination of informal probate is not an adjudication and does not preclude formal probate proceedings."); AS 13.16.140(b) ("A petition may seek formal probate of a will without regard to whether the same or a conflicting will has been informally probated.").

[20] 76 P.3d 847, 858 (Alaska 2003).

[21] *Id.* at 855 (citing AS 13.06.015). AS 13.06.015 provides that "[u]nless displaced by the particular provisions of AS 13.06 – AS 13.36 [the Uniform Probate (continued...)

provision that prohibits a party from contesting the validity of a subsequent will as part of a proceeding to determine whether to probate a former will or that requires a will contest to take the form of a separate proceeding. In the absence of such statutory prohibitions, it is unclear why the superior court denied Etta's request to amend her pleadings to contest Offenesia's 2006 will or failed to permit her to convert her informal probate to a formal probate proceeding.

Nor do Etta's actions fall within the Rule 15(a) exception regarding "repeated failure to cure deficiencies."[22] Etta initially attempted to comply with the probate court's directives as to how to proceed with her claims. Of note, the directives that resulted from the November 2012 and January 2013 status hearings were somewhat contradictory. At the November 2012 status hearing Magistrate Judge Duggan told Etta that he could not admit Offenesia's 1987 will for probate "until [the court] ha[d] a copy of that 2006 will" and had held a hearing and determined its validity. When Etta asked about the specific process she would need to follow toward this determination, Magistrate Judge Duggan told her she would need to file a copy of the 2006 will with the court and that there would then be a hearing during which she could present evidence regarding why that will should not be admitted and why it is invalid. In response, Etta promptly submitted a copy of the 2006 will. Magistrate Judge Duggan did not indicate in November 2012 that Etta could not use the informal probate proceeding as a forum to contest the 2006 will. Only later during a January 2013 status hearing did Magistrate

---

[21](...continued)
Code, as adopted], the principles of law and equity supplement those provisions." *See also Pestrikoff v. Hoff*, 278 P.3d 281, 286 (Alaska 2012) (noting that AS 13.06.015 "permits a court to apply equitable principles to supplement the probate code").

[22]     *Miller v. Safeway, Inc.*, 102 P.3d 282, 294 (Alaska 2004) (citing Civil Rule 15(a)).

Judge Duggan tell Etta that she would need to file a separate proceeding to invalidate the 2006 will. Thus, it appears that Etta attempted to comply with the superior court's directives.

Given the latitude the superior court is to give to pro se litigants,[23] we remand with instructions for the superior court to allow Etta to amend her pleadings to convert her informal probate petition into a formal proceeding conditioned upon her meeting all of the notice and other requirements for formal probate.[24] Etta will then be permitted to submit additional evidence to substantiate her claims so that the superior court may consider the merits of her challenge to the 2006 will.

B.     **Magistrate Judge Duggan Was Not Required To Recuse Himself.**

The second question on appeal is whether Magistrate Judge Duggan should have recused himself as Etta requested. The bases for disqualification of a judge are laid out in AS 22.20.020(a).[25] None of the reasons Etta offers

---

[23]     *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("[T]he pleadings of pro se litigants should be held to less stringent standards than those of lawyers.").

[24]     AS 13.16.150(a) requires notice be given to "devisees and executors named in any will that is being, or has been probated or offered for informal or formal probate" and to "any personal representative of the decedent whose appointment has not been terminated," among others. AS 13.16.145 provides other requirements for formal probate proceedings.

[25]     AS 22.20.020(a) provides:

A judicial officer may not act in a matter in which

(1)     the judicial officer is a party;

(2)     the judicial officer is related to a party or a party's attorney by consanguinity or affinity within the third degree;

(3)     the judicial officer is a material witness;

(continued...)

fall within the reasons for recusal listed in the statute. While judges are required to recuse themselves if there is actual bias or the appearance of bias,[26] none of Etta's allegations suggest either.

Etta requested disqualification based on the fact that Magistrate Judge Duggan "refused to grant [her] a filing fee waiver fully aware that [Etta] [is] an incarcerated individual who earns a very low income with two institutional jobs." She

---

[25](...continued)

> (4)     the judicial officer or the spouse of the judicial officer, individually or as a fiduciary, or a child of the judicial officer has a direct financial interest in the matter;

> (5)     a party, except the state or a municipality of the state, has retained or been professionally counseled by the judicial officer as its attorney within two years preceding the assignment of the judicial officer to the matter;

> (6)     the judicial officer has represented a person as attorney for the person against a party, except the state or a municipality of the state, in a matter within two years preceding the assignment of the judicial officer to the matter;

> (7)     an attorney for a party has represented the judicial officer or a person against the judicial officer, either in the judicial officer's public or private capacity, in a matter within two years preceding the filing of the action;

> (8)     the law firm with which the judicial officer was associated in the practice of law within the two years preceding the filing of the action has been retained or has professionally counseled either party with respect to the matter;

> (9)     the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

[26]     *See Jourdan v. Nationsbanc Mortg. Corp.*, 42 P.3d 1072, 1082 (Alaska 2002).

also asserts that he improperly refused to appoint counsel for her. Magistrate Judge Duggan informed Etta that he did "not believe there is a statute or law in Alaska that requires the court to appoint an attorney" in this circumstance, but invited Etta to submit a citation to such a law, if it exists.[27]

Magistrate Judge Duggan ultimately denied her motion for disqualification. Judge McKay reviewed Magistrate Judge Duggan's decision not to recuse himself and concluded that, after a review of the pleadings, Etta's recusal request was "not supported by any evidence of bias on the part of Master Duggan," but rather that Etta was "unhappy with Master Duggan's decision and orders."

Magistrate Judge Duggan's rulings, although unfavorable to Etta, did not form grounds for disqualification. A party's dissatisfaction with the court's ruling neither suggests bias nor provides grounds for disqualification.[28] "By themselves, interpretations of the law are not sufficient to demonstrate the existence of bias."[29] We thus affirm Judge McKay's order approving Magistrate Judge Duggan's decision not to recuse himself. We similarly deny Etta's request on appeal that Judge McKay, Magistrate Judge Duggan, and Magistrate Judge Stanley be barred from presiding over further case proceedings. After a review of the record, we can discern no evidence or

---

[27] Alaska Administrative Rule 12, titled "Procedure for Counsel and Guardian Ad Litem Appointments at Public Expense," does not provide for appointment of counsel in probate cases.

[28] *See Jourdan*, 42 P.3d at 1082 (citing *Lacher v. Lacher*, 993 P.2d 413, 420-21 (Alaska 1999) (dismissing an argument for recusal as "little more than an expression of [appellant's] dissatisfaction with the superior court's ruling")) (alteration in original).

[29] *Id.*

manifestation of bias or any appearance of bias against Etta on the part of any of these judicial officers.

## V.    CONCLUSION

We REVERSE and REMAND to the superior court to allow Etta to convert this action to a formal probate proceeding and amend her filing to contest the 2006 will, but we AFFIRM the superior court's order approving Magistrate Judge Duggan's decision not to recuse himself.