NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of ) | |
| ) | Supreme Court No. S-16258 |
| OFFENESIA YAKO BAVILLA ) | |
| ) | Superior Court No. 3AN-12-01316 PR |
| ) | |
| ) | MEMORANDUM OPINION |
| ) | AND JUDGMENT* |
| ) | |
| ) | No. 1635 – June 14, 2017 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third
Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances:  Etta Maria Bavilla, pro se, Eagle River,
Appellant.  No appearance by Appellee Steven Bavilla.

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger,
and Carney, Justices.

## I.      INTRODUCTION

Etta Bavilla attempted to informally probate her mother's 1987 will, but the
court did not allow the informal probate because her mother had signed a new will in
2006.  In a prior appeal we held that Etta should have been permitted to amend her
pleadings and convert the matter to a formal probate proceeding to contest the 2006 will.
On remand she argued that her mother had been subject to undue influence in executing
the 2006 will, but she introduced little evidence to support her claim.  The superior court

---

\*      Entered under Alaska Appellate Rule 214.

found that she had not met her burden of proof and admitted the 2006 will to probate. Etta appeals the decision and claims that the court was biased. We affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

Offenesia Yako Bavilla died in 2010.[1] In 1987 she executed a will that left most of her assets to her two children, Etta and Steven.[2] By the mid-2000s Offenesia was "elderly and slipping mentally"[3] and living in a nursing home. In November 2005 her doctor wrote that her "mental status ha[d] declined significantly" between 2002 and 2005, noting that she had become nearly mute and appeared to hallucinate periodically. The doctor predicted that her condition was likely to continue to deteriorate because of her dementia.

In mid-February 2006 Offenesia executed a new will witnessed by two people who worked at the nursing home.[4] It explicitly "revok[ed] all prior wills and codicils" and left property to Steven and to several other relatives, but excluded Etta. Steven was named as executor, with a great-niece as the alternate.

---

[1]    *In re Estate of Bavilla*, 343 P.3d 905, 906 (Alaska 2015). The facts of this case were explained in more detail in our earlier opinion.

[2]    *Id.* at 906 & n.1.

[3]    *Id.* at 906. Her death certificate lists Alzheimer's and dementia as the cause of death.

[4]    *Id.* Offenesia was a Yup'ik elder; the 2006 will included a handwritten certification that it had been translated into the Yup'ik language.

Two years after Offenesia's 2010 death Etta applied for informal probate of the 1987 will, arguing that the 2006 will was invalid.[5] The magistrate judge denied Etta's application for informal probate and explained that she would need to file a "separate proceeding" in order to invalidate the 2006 will.[6] Several months later Etta sought to amend her pleading to contest the 2006 will and to disqualify the magistrate judge for bias.[7] The superior court denied the motion to amend and affirmed the magistrate's decision not to recuse himself.[8]

Etta appealed both orders to this court. We affirmed the recusal decision because there was no evidence of bias, but held that the superior court should have allowed Etta to amend her pleading under Alaska Civil Rule 15(a), which requires leave to amend to "be freely given when justice so requires."[9] We noted that Etta's claim would "turn on factual findings that the superior court ha[d] not yet made" and remanded the case to the superior court so Etta could submit additional evidence and have her claim reviewed on the merits.[10]

On remand Etta moved to have the estate formally probated and to have the 2006 will nullified. She argued that the 2006 will's executors had "utilized assets" of the estate without fulfilling their duties, and she said she had sought criminal charges against Steven but had been turned away. Her subsequent request for appointed counsel "due

---

[5]     *Id.*

[6]     *Id.* at 906-07.

[7]     *Id.* at 907.

[8]     *Id.*

[9]     *Id.* at 908-11.

[10]     *Id.* at 909-11.

to mental health issues" was denied.

The superior court granted Etta's petition to convert the matter to a formal probate proceeding under AS 13.16.140, and an evidentiary hearing was held before a magistrate judge in August 2015. Etta appeared by telephone. The court noted on the record that none of the other parties or interested persons had appeared in person or by phone. When asked what evidence or witnesses she wanted to present, Etta referred to the 2005 letter from Offenesia's doctor, the fact that Offenesia's signature on the 2006 will was shaky and misspelled, and a contact information sheet on which her sister was listed as guardian. She also told the court that she believed having nursing home employees serve as witnesses to the will was a conflict of interest or amounted to coercion because Offenesia had allegedly "suffered a lot of abuse and neglect" at the home.

The court explained that by signing the will the witnesses testified that, at the time of signing, Offenesia had been "of sound mind and [under] no constraint or undue influence." When asked if she had any evidence to contradict that testimony other than the doctor's letter, Etta only referred again to the misspelled signature. The court asked five times if she had other evidence to present. Etta replied more than once that she did not know how she could gather more evidence because she was incarcerated. Within days of the hearing and before the magistrate judge issued a recommendation, Etta moved for reconsideration and requested a jury trial, arguing that the magistrates and judges involved in the case were all biased.

The magistrate judge issued his recommendation in February 2016. He explained that Etta claimed the 2006 will was invalid because Offenesia was not competent to execute a will at that time. He noted that Etta had not presented any new evidence or called any witnesses at the evidentiary hearing, and found that there was no evidence other than Etta's "beliefs and suspicions" to support her claim of undue

influence. The magistrate judge found that Etta had not presented sufficient evidence to establish: (1) that the will had not been prepared at Offenesia's direction; (2) that Offenesia had been incompetent or subject to undue influence when she signed the will; or (3) that Offenesia had "insufficient mental capacity to understand the nature and extent of her property, the natural or proper objects of her bounty, or the nature of her testamentary act." The magistrate judge therefore recommended that the 2006 will be admitted to probate. Etta filed an objection to the recommendation, repeating her claims that the judicial officers were biased against her and that the will had been executed illegally.

In March 2016 the superior court approved the recommendation, writing, "The [c]ourt reviewed testimony and evidence on file, as well as objections to the report. There is simply no admissible evidence presented to support Ms. Bavilla's speculation as to incompetency."

Etta appeals.

## III. STANDARD OF REVIEW

"Issues of testamentary capacity and undue influence involve questions of fact" that we review for clear error.[11] A factual finding is clearly erroneous when "we are left with 'a definite and firm conviction on [review of] the entire record that a mistake has been made, although there may be evidence to support the finding.' "[12]

## IV. DISCUSSION

Etta argues that the superior court erred in determining that the 2006 will was valid and that both the magistrate judge and the superior court judge were biased

---

[11]     *Crittell v. Bingo*, 36 P.3d 634, 638 (Alaska 2001) (citing *In re Estate of Kottke*, 6 P.3d 243, 245 (Alaska 2000); *In re Estate of Kraft*, 374 P.2d 413, 416 (Alaska 1962)).

[12]     *Id.* (quoting *Kottke*, 6 P.3d at 245).

against her. She also claims that her request for a jury trial was wrongly ignored, but this claim is waived for inadequate briefing.[13]

## A. The Validity Of The 2006 Will

Under AS 13.16.170, "[c]ontestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation." Etta argues that her mother was not capable of making a will, that she was subject to undue influence, and that the will was fraudulent.[14]

### 1. Lack of testamentary capacity

Whether an individual had the necessary testamentary capacity to execute a will depends upon "whether the testator had sufficient mental capacity to understand," among other things, "the nature of her testamentary act."[15] If the court finds a deficiency, it "must invalidate the will. But the deficiency must be shown to have existed when the will was executed."[16]

---

[13]    "[E]ven when a [self-represented] litigant is involved, an argument is considered waived when the party cites no authority and fails to provide a legal theory for his or her argument." *Thoeni v. Consumer Electronic Servs.*, 151 P.3d 1249, 1257 (Alaska 2007) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004)). In any case, we have explained that there is no right to jury trial in will contest cases. *Riddell v. Edwards*, 32 P.3d 4, 7-8 (Alaska 2001).

[14]    Etta's claim that the 2006 will was fraudulent is also waived because it has not been adequately briefed. She has not asserted any facts that could lead to a conclusion of fraud and has not made a legal argument in support of the claim. *See Thoeni*, 151 P.3d at 1257 (quoting *Peterson*, 93 P.3d at 464 n. 9). And this court is not the appropriate forum to address her requests that several individuals be held in contempt and that criminal investigations be conducted.

[15]    *Ware v. Ware*, 161 P.3d 1188, 1195 (Alaska 2007) (citing *Crittell*, 36 P.3d at 638).

[16]    *Crittell*, 36 P.3d at 638-39 (first citing *Kottke*, 6 P.3d at 246; then citing
(continued...)

The superior court found that Etta had presented insufficient evidence to support her claim. To invalidate the will, Etta was required to show that Offenesia was incompetent at the time of signing.[17] Etta relies heavily on the 2005 physician letter. Although the letter raises concerns about Offenesia's mental capacity, it is not sufficient to prove that Offenesia was incompetent when she signed the 2006 will. The doctor noted that Offenesia "may become lost" between her bed and her bathroom and that she appeared to hallucinate "[p]eriodically," predicting that her condition would continue to decline. But without additional evidence of her condition at the time of signing, the letter cannot prove that she was incompetent on the day she read and signed the will. Offenesia's shaky and misspelled signature could as easily have been caused by a loss of fine motor control as by any mental decline. Etta had the burden of showing incapacity at the time of signing and she did not present enough evidence to meet that burden.

### 2. Undue influence

A party challenging a will based on undue influence must prove that "the testator was virtually compelled to make a will [that the testator] would not have made [if] left to the free exercise of [her] own judgment and wishes."[18] We ask whether the willpower of this particular testator was "so destroyed as to substitute the will of another."[19]

---

[16]    (...continued)
*Kraft*, 374 P.2d 413).

[17]    *See id.* at 641 (noting that "the superior court's finding of testamentary incapacity correctly focused on the day of the contested will's signing").

[18]    *Id.* at 639 (first two alterations in original) (quoting *Kraft*, 374 P.2d at 417).

[19]    *Id.* (quoting 1 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE
(continued...)

Etta presented no evidence that influence was brought to bear on Offenesia by the primary beneficiaries of the new will or anyone else. She testified at the hearing that she believed Steven had asked the Alaska Legal Services Corporation to draw up the new will, but there is no evidence that he was involved in preparing or signing the will. Without evidence that someone pressured Offenesia about the new will, Etta cannot show that Offenesia was subject to undue influence. Although she firmly believes that her mother was unduly influenced, her belief does not provide sufficient evidence to invalidate the will.

## B. Bias

Etta claims that both the magistrate judge and the superior court judge were biased against her and actively supported the beneficiaries of the 2006 will against her. She claims that the superior court judge "act[ed] as the opposing part[y's] attorney by making wrong 'technical' calls," in particular the decision that the 2005 doctor's letter was insufficient evidence to support her claims. But we have explained that "judicial bias should not be inferred merely from adverse rulings."[20] To show judicial bias, Etta "must show that the judge formed an opinion of her from extrajudicial sources, resulting in an opinion other than on the merits."[21] Etta has not provided any evidence that either judge had an extrajudicial source for his opinion. Furthermore the transcript shows that

---

[19]    (...continued)
LAW OF WILLS § 15.2, at 715 (rev. ed. 1960)).

[20]    *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015) (quoting *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011)).

[21]    *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) (citing *Peterson v. Ek*, 93 P.3d 458, 467 n.20 (Alaska 2004)).

the magistrate judge was uniformly respectful of Etta at the hearing.[22] It also shows he was careful to explain the legal situation to Etta and encouraged her to provide and explore the evidence, giving her the extra support and consideration to which self-represented litigants are entitled. Etta has not shown that the court was biased.

## V.   CONCLUSION

We AFFIRM the judgment of the superior court.

---

[22]   *See Kinnan*, 349 P.3d at 153 ("[N]othing in the judge's demeanor or tone . . . 'objectively permit[s] a conclusion that the court was biased, or appeared to be biased.'" (second alteration in original) (quoting *Greenway v. Heathcott*, 294 P.3d 1056, 1064 (Alaska 2013)).