*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TRACY HESTER, | ) | |
| | ) | Supreme Court No. S-15809 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-06873 CI |
| v. | ) | |
| | ) | O P I N I O N |
| AURORA LANDAU; SHOWBOAT | ) | |
| SHOW CLUB ANCHORAGE, LLC; | ) | No. 7254 – June 29, 2018 |
| TERRY MAURICE STAHLMAN; | ) | |
| and ESTATE OF JAMES GOARD; | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Michael A. Stepovich, Stepovich & Vacura Law Office, Fairbanks, for Appellant. Kenneth W. Legacki, Anchorage, for Appellee Landau. No appearance by Appellees Showboat Show Club Anchorage, LLC; Terry Maurice Stahlman; or Estate of James Goard.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.
WINFREE, Justice, concurring.

## I.      INTRODUCTION

A woman sued her former employer for unpaid compensation, naming the company and both of its owners as defendants. One of the owners died while the suit

was pending, and the former employee substituted the owner's estate in the proceedings. Judgment was eventually entered in favor of the former employee. A year later the deceased owner's widow moved for relief from the judgment as the sole beneficiary of his estate, arguing that neither her husband nor the estate had been properly served with notice of the suit. The former employee responded that service had been proper and that, in any case, the widow did not have authority to file a motion on behalf of the estate. The court denied the motion on the ground that the widow had not shown good cause for relief from the judgment. We affirm on the alternate ground that the widow did not have authority to act on the estate's behalf.

## II.    FACTS AND PROCEEDINGS

Aurora Landau was a dancer at the Showboat Show Club in Anchorage. In April 2011 she filed a complaint in superior court against Showboat Show Club Anchorage, LLC, seeking to recover unpaid wages, overtime compensation, and impermissible deductions from her earnings. Her suit also named the LLC's two members and managers, Terry Stahlman and James Goard. Stahlman, also the LLC's registered agent, was personally served a summons and complaint for all three defendants at his Anchorage residence, which was listed in the LLC's state licensing reports as the entity's principal office and both Stahlman's and Goard's member address.

It appears undisputed that Goard actually lived in Fairbanks. Yet Landau's efforts to serve Goard consisted of unsuccessfully sending the summons and complaint by certified mail to Stahlman's Anchorage residence and then serving Goard's copies of the summons and complaint on Stahlman at the same residence.

Stahlman responded to the summons and complaint stating that he had settled the claim, but Landau later advised the court that no payment had been made and the settlement had failed. Landau then moved for entry of default against Goard and the LLC. When Landau sought Goard's default, Landau's attorney asserted in his affidavit

that service on Goard had been accomplished by leaving the summons and complaint with Stahlman, "a person of reasonable age and discretion at the address of record pursuant to the Corporations Section, State of Alaska, for service on James Goard," and attaching the return of service to his affidavit. The attached return of service for Goard said that the summons and complaint were left with Stahlman at his Anchorage residence, which was described as "the defendant['s] usual place of residence." A deputy clerk entered their default in February 2012. In April the LLC appeared before the court through counsel, and shortly thereafter the court set aside the default with respect to it. The default remained in effect as to Goard.

Goard died in April 2012. His widow, Tracy Hester, is evidently his estate's sole beneficiary. Robert Nesbitt sought appointment as the estate's personal representative in September but was not appointed by the probate court until April 2013.

On August 21 the court held a trial setting conference for Landau's claims against the LLC, Stahlman, and Goard. The court noted that Goard was dead and re-entered default against the LLC because it no longer was represented by counsel. In a later colloquy between the court and Landau's attorney, the court noted that once notice of a party's death is on the record, the court must dismiss claims against the decedent unless there is a party substitution within 90 days.[1] Landau's attorney acknowledged that

---

[1]     Alaska Civil Rule 25(a) provides:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made . . . by any party, and shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record . . . , the action shall be dismissed as to the

(continued...)

he "may have to bring in the estate."

Trial began on December 19 and was then continued to a later date. On December 31 — more than 90 days after the August 21 hearing, after the first day of trial had concluded, and while Nesbitt's petition for appointment was pending in probate court — Landau moved to substitute the Estate of James Goard as a defendant in Goard's place. The court granted the substitution the following month, even though an estate had not yet been opened.[2] Landau then notified the putative estate that she had an interest.[3]

Trial concluded June 18, 2013. In July the court found Stahlman, Goard's estate, and the LLC jointly and severally liable for Landau's damages. Landau was awarded a total of $74,383.23 in damages, prejudgment interest, penalties, and attorney's fees and costs. She then notified the Goard estate by filing a copy of the judgment in the probate proceeding.

In November 2014, a year after the estate was notified, Hester moved for relief from judgment under Alaska Civil Rule 60(b) "as sole beneficiary of the Estate of James Goard." She argued that neither Goard, his estate, nor herself as sole beneficiary

---

[1]      (...continued)
deceased party.

*But cf. Estate of Lampert ex rel. Thurston v. Estate of Lampert ex rel. Stauffer*, 896 P.2d 214, 217-18 (Alaska 1985) (holding court did not err by enlarging time for substitution after death of party).

[2]      We have previously made clear that a party may not sue a decedent without first obtaining appointment of a personal representative to give the court personal jurisdiction. *Hamilton v. Blackman*, 915 P.2d 1210, 1215-16 (Alaska 1996). Rule 25(a)'s substitution process appears to similarly contemplate that there actually be an estate opened and a personal representative named who would substitute for the deceased party.

[3]      *See* AS 13.16.070 (providing for filing demand for notice against unopened estate).

had ever been properly served with the complaint. She further argued that Landau had moved to substitute the estate after the deadline set by Civil Rule 25(a). Throughout the motion Hester asserted her status as "sole beneficiary of the Estate" as the basis for her action.

Landau responded that all relevant persons, including Hester, had been properly served and that Hester had not shown good cause to vacate the default judgment. She also noted that Hester was not the estate's personal representative and argued that she therefore lacked standing to object to the substitution of the estate or to the default judgment. Hester's reply repeated her arguments that Goard had not been properly served and argued that Hester had interest-injury standing because, as the sole beneficiary, her financial interest in the case was identical to that of the estate.

The superior court denied Hester's motion in December 2014, stating that the defendants had been properly served and that both Goard and Hester "were aware of the litigation and the default." The court found that Hester had not shown good cause to vacate the judgment because she had not shown that the outcome of the suit might be different if relief were granted. The court did not address the dispute over Hester's standing to act for the estate.

Hester appealed, arguing that neither Goard nor his estate had been properly served with notice of the litigation and that the default judgment entered against the estate should be vacated. We ordered supplemental briefing on Hester's standing to seek relief from judgment on behalf of the estate.

III. STANDARD OF REVIEW

Statutory interpretation is a question of law to which we apply our

independent judgment.[4]

## IV. DISCUSSION

We have not previously addressed whether the sole beneficiary of an estate who is not its personal representative has legal authority to appear in court on behalf of the estate. We conclude that Alaska's probate code gives that authority only to the estate's personal representative. We therefore affirm the superior court's order denying Hester's motion for relief from judgment on the alternate ground that Hester did not have the authority to file the motion.[5]

"We interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[6] Statutory interpretation begins with the text's plain meaning,[7] but we also consider legislative history, even when the text "is facially unambiguous."[8] Because Alaska adopted the Uniform Probate Code (UPC) "in its entirety" in 1972,[9] the UPC's

---

[4]      *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016) (citing *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014)).

[5]      *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015) ("We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party." (quoting *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008))).

[6]      *Coleman v. McCullough*, 290 P.3d 413, 414 (Alaska 2012) (quoting *Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1258 (Alaska 2007)).

[7]      *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

[8]      *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 387 (Alaska 2013) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012)).

[9]      *In re Estate of Bavilla*, 343 P.3d 905, 909 (Alaska 2015) (citing *Jaworski*
(continued...)

commentary is "instructive in interpreting the Alaska probate statutes."[10]

Alaska probate law defines and establishes various roles for people connected to a decedent or an estate. One role is that of an "interested person," which "includes heirs, devisees, children, spouses, creditors, beneficiaries, and other persons having property rights in or claims against" the estate.[11] Hester is an interested person with respect to the Goard estate because she is a beneficiary of the estate. Landau is also an interested person because she has a claim against the Goard estate. Interested persons have specific rights under Alaska law. For example, they have the right to seek informal probate of a will,[12] to receive notice of hearings and other actions of the court,[13] and to demand that a personal representative give bond.[14]

Personal representatives play a key role in administering and distributing the estate.[15] They are "under a duty to settle and distribute the estate of the decedent in accordance with the terms of" the will[16] and "have statutory powers enabling them to collect, protect, sell, distribute and otherwise handle all steps in administration without

---

[9]     (...continued)
*v. Estates of Horwath ex rel. Streets*, 277 P.3d 753, 759 (Alaska 2012)).

[10]     *In re Estate of Baker*, 386 P.3d 1228, 1233 (Alaska 2016) (citing *In re Estate of Maldonado*, 117 P.3d 720, 728 (Alaska 2005)).

[11]     AS 13.06.050(26).

[12]     *See* AS 13.16.090(a)(3), (d).

[13]     *See* AS 13.06.110; AS 13.16.620.

[14]     *See* AS 13.16.265.

[15]     *See* AS 13.16.015; AS 13.16.245-.440.

[16]     AS 13.16.350(a).

further order of the [c]ourt."[17] Personal representatives are authorized to take a number of different types of actions in "acting reasonably for the benefit of the interested persons."[18] One of these is the authority to "prosecute or defend claims[] or proceedings . . . for the protection of the estate."[19] Another provision gives the personal representative "the same standing to sue and be sued . . . as the decedent had immediately before death."[20] Although neither provision explicitly states that this grant of authority is exclusive or that no other person may take such actions on behalf of the estate, the only person to whom they delegate authority is the personal representative. Neither these provisions nor any other part of the probate code grants such authority to anyone else.

A provision of a related statute bolsters this reading. Part of Alaska's Code of Civil Procedure deals with "Survival and Wrongful Death Actions."[21] Alaska Statute 09.55.570 specifies that "[a]ll causes of action by one person against another . . . survive to the personal representatives of the former and against the personal representatives of the latter."[22] The legislative record of Alaska's adoption of the UPC indicates that AS 09.55.570 was offered as an amendment to the UPC bill[23] and was

---

[17] UNIF. PROBATE CODE art. III, general cmt. (UNIF. LAW COMM'N 1969), http://www.uniformlaws.org/shared/docs/probate%20code/upc_scan_1969.pdf.

[18] AS 13.16.410.

[19] AS 13.16.410(22).

[20] AS 13.16.350(c).

[21] AS 09.55.570-.585.

[22] AS 09.55.570.

[23] 1972 House Journal 937, 940.

subsequently adopted.[24] Both the version adopted in 1972 and the current statute specify that it is the personal representative who is authorized to proceed in actions relating to the death of the person whose estate they represent.[25] When considered together with the grant of standing to sue and be sued in AS 13.16.350(c), this provision confirms that the legislature specifically intended the personal representative to be the legal actor on behalf of an estate.

The probate code's provisions concerning the appointment and removal of a personal representative also support this view. They establish requirements for a person to be appointed as personal representative and, critically, to exercise the powers of the office. In order "to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court or registrar, qualify, and be issued letters."[26] The personal representative may also be required to file a bond.[27] The personal representative's duties and powers "commence upon appointment," although they also "relate back in time" to prior acts by the appointed person.[28] The personal representative has the power to ratify actions taken on behalf of the estate by others prior to the representative's appointment, but this ability does not extend to actions taken by others after appointment of a personal

---

[24] *See* Ch. 78, § 4, SLA 1972. The statute was amended slightly in 1973 to its present form. *See* Ch 56, § 34, SLA 1973.

[25] *Compare* AS 09.55.570 *with* Ch. 78, § 4, SLA 1972.

[26] AS 13.16.015 (with exception regarding Foreign Personal Representatives in AS 13.21 not applicable here).

[27] *See* AS 13.16.255.

[28] AS 13.16.340.

representative.[29]

The probate code takes care to ensure that there is no lapse in the estate's representation once a personal representative is appointed. Under AS 13.16.290(c), a personal representative may resign the position after giving notice, but the resignation is not effective until a successor has been appointed and the estate's assets have been turned over to the successor. A personal representative's appointment ultimately terminates when probate is over.[30] The code's careful prevention of a gap in representation of the estate would not be necessary if a beneficiary could simply step in to perform the representative's duties or exercise the representative's authority.[31]

The probate code provides other remedies to interested persons short of authorizing them to act as an estate's legal representative. First, AS 13.16.275(a) allows any interested person to petition the probate court for an order "to secure proper performance of the personal representative's duty." Second, AS 13.16.295(a) permits an interested person to "petition for removal of a personal representative for cause at any time." And if an interested person is unable to prevent a personal representative's breach

---

[29] *Id.* (relating to the "[t]ime of accrual of duties and powers" of the personal representative); *see* UNIF. PROBATE CODE, *supra* note 17, § 3-701 cmt. ("The sentence concerning ratification is designed to eliminate technical questions that might arise concerning the validity of acts done by others *prior to* appointment." (emphasis added)).

[30] *See* AS 13.16.290(a)-(b) (providing that termination of appointment occurs through an order closing the estate or one year after the filing of a closing statement).

[31] As Landau notes, a personal representative has a fiduciary duty to the estate; interested parties do not. *See* AS 13.16.350(a) ("A personal representative is a fiduciary who shall observe the standards of care applicable to trustees . . . . A personal representative is under a duty to settle and distribute the estate . . . as expeditiously and efficiently as is consistent with the best interests of the estate."). In cases with more than one interested person, allowing a single interested person to act on behalf of the entire estate could lead to serious conflicts of interest.

of fiduciary duty by one of these methods, that person may sue the personal representative for the damage or loss under AS 13.16.395.

Alaska probate law thus establishes a comprehensive scheme for the representation of an estate in legal matters.[32] This scheme relies on the personal representative to act on the estate's behalf and does not allow others to exercise those powers. Because Hester was not the estate's personal representative, she did not have the authority to act on its behalf.[33] Whatever defects may have existed in the original service of Goard or the later substitution of his estate, Hester did not have the legal right to move for relief from judgment on the estate's behalf.

## V.    CONCLUSION

The order of the superior court is AFFIRMED on the alternate ground that Hester did not have the legal authority to bring the motion for relief from judgment.

---

[32]    *Cf. Sinka v. N. Commercial Co.*, 491 P.2d 116, 118 (Alaska 1971) (holding that the Uniform Commercial Code provides "a comprehensive scheme for recovery of damages" for certain types of injuries).

[33]    Because we do not address or resolve the merits of the motion for relief from judgment, our opinion does not foreclose the estate, as the party with the proper legal authority, from bringing a similar motion in the superior court.

Hester also argued in her supplemental briefing that she is a real party in interest pursuant to Alaska Civil Rule 17(a) and thus has the authority to bring the motion for relief from judgment. Rule 17(a) is inapplicable to Hester's motion for relief from judgment because Hester is not *prosecuting* an *action* in the name of a real party in interest as required by the text of the civil rule. *See* Alaska R. Civ. P. 17(a). Accordingly, given the rule's inapplicability to the facts of this case, we do not further address this argument.

WINFREE, Justice, concurring.

I agree with today's decision. I write separately to highlight what I believe to be serious service of process questions that will remain unanswered in light of that decision.

Effective service of a summons and complaint on a competent individual requires: (1) actual personal service; (2) leaving the papers at the person's dwelling house or usual place of abode with another person of suitable age and discretion then residing there; (3) delivering the papers to an agent authorized by appointment or law to receive them; or (4) completed signed delivery by registered or certified mail with return receipt.[1] If service cannot be made through these methods, a party may apply to the court for alternative service methods.[2]

James Goard apparently lived in Fairbanks. Aurora Landau's initial service efforts for Goard consisted of unsuccessfully sending the summons and complaint by certified mail to Terry Stahlman's Anchorage residence and then delivering Goard's copies of the summons and complaint to Stahlman at that same residence. But Landau had not applied to the court for permission to serve Goard at Stahlman's residence.

When Landau sought Goard's default, Landau's attorney asserted in his affidavit that service on Goard had been accomplished by leaving the summons and complaint with Stahlman, "a person of reasonable age and discretion at the address of record pursuant to the Corporations Section, State of Alaska, for service on James Goard," attaching the return of service to his affidavit. It is unclear exactly what Landau's attorney meant by address of record with the Corporations Section for "service" on Goard, but it is clear that the address was the one listed for Goard with the

---

[1]     Alaska R. Civ. P. 4(d)(1), (h).

[2]     *See* Alaska R. Civ. P. 4(e).

-12-                                                    **7254**

Corporations Section for purposes of his relationship to Showboat Show Club Anchorage LLC. The attached return of service for Goard said that the summons and complaint were left with Stahlman at his Anchorage residence, which was described as "the defendant[']s usual place of residence." The return of service as to Goard was false; Stahlman's Anchorage residence was not Goard's usual place of residence, it was Goard's LLC-related address.

This raises questions that will remain unanswered by this court in light of today's decision that Goard's widow lacked standing to bring an Alaska Civil Rule 60(b) motion on Goard's estate's behalf. Alaska Civil Rule 4(d)(1) permits individual service by leaving papers at a person's dwelling house or usual place of abode. Could Landau effectively ignore that provision by instead unilaterally choosing to leave service papers at an address Goard had listed with the state for LLC purposes, even though it apparently was not Goard's dwelling house or usual place of abode? When an individual member of an LLC, a partner in a partnership, or a shareholder in a corporation has an address listed with the state on a required filing, is that address — as a matter of law, notwithstanding Rule 4(d)(1) and without regard to Rule 4(e) — an effective service address for the individual with respect to a lawsuit arising from the entity's operations?

The superior court apparently answered "yes" to one or both of those questions. Today's decision leaves the superior court's answer(s) unreviewed.